UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CITY OF ST. CLAIR SHORES POLICE AND
FIRE RETIREMENT SYSTEM, Individually and
on Behalf of All Others Similarly Situated,

                     Plaintiff,

          v.

UNILEVER PLC, ALAN JOPE, RITVA
SOTAMAA, and GRAEME PITKETHLY,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

22-cv-05011 (LGS)

ECF Case
Electronically Filed

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF <u>THEIR MOTION TO DISMISS THE AMENDED COMPLAINT</u>

Jay B. Kasner
Susan L. Saltzstein
Scott D. Musoff
Mackenzie G. Newman
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Phone: (212) 735-3015
Fax: (212) 735-2000

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. iv

PRELIMINARY STATEMENT .............................................................................................1

STATEMENT OF FACTS ......................................................................................................5

     A.     Unilever, Ben & Jerry's and the B&J Limited Board.............................................5

     B.     Ben & Jerry's Preexisting Business in Israel .........................................................6

     C.     The B&J Limited Board Purportedly Resolves to End Sales in the West
           Bank .......................................................................................................................6

     D.     Post-Announcement Events .....................................................................................8

     E.     The Amended Complaint .........................................................................................9

ARGUMENT ..........................................................................................................................9

I.     PLAINTIFFS DO NOT PLEAD AN ACTIONABLE FALSE OR MISLEADING
      MISSTATEMENT OR OMISSION .........................................................................10

     A.     Plaintiffs Do Not Allege Defendants Had a Duty to Disclose the
           Purportedly Omitted Information. .........................................................................10

           1.     The Company's risk disclosures were not misleading for failure to
                 disclose the Resolution. ...........................................................................11

           2.     Plaintiffs do not plead a violation of Item 303 of Regulation S-K. ...........17

     B.     Plaintiffs Fail to Plead the Purported Omission Was Material. .............................19

II.    PLAINTIFFS FAIL TO PLEAD SCIENTER .................................................................21

     A.     Plaintiffs Do Not Allege Motive or Opportunity. ..................................................21

     B.     Plaintiffs Fail to Adequately Plead Conscious Misbehavior or
           Recklessness. ........................................................................................................21

     C.     Plaintiffs' Proffered Inferences Are Not Cogent and Are Less Compelling
           Than the Opposing Nonfraudulent Inferences. ......................................................23

III.   PLAINTIFFS' RULE 10b-5(a) AND (c) CLAIMS SHOULD BE DISMISSED .............24

IV.   PLAINTIFFS FAIL TO STATE A SECTION 20(a) CLAIM .........................................25

CONCLUSION.................................................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Arkansas Public Employees Retirement System v. Bristol-Myers Squibb Co.*,
    28 F.4th 343 (2d Cir. 2022) ..................................................................................2, 9, 21

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)...................................................................................................2

*In re Australia & New Zealand Banking Group Ltd. Securities Litigation*,
    No. 08 Civ. 11278 (DLC), 2009 WL 4823923 (S.D.N.Y. Dec. 14, 2009) .......................12

*Axar Master Fund, Ltd. v. Bedford*,
    308 F. Supp. 3d 743 (S.D.N.Y. 2018), *aff'd*, 806 F. App'x 35 (2d Cir. 2020).................18

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988).........................................................................................................10

*Boluka Garment Co., Ltd. v. Canaan Inc.*,
    547 F. Supp. 3d 439 (S.D.N.Y. 2021)............................................................10, 16, 19, 20

*Bratusov v. Comscore, Inc.*,
    No. 19 Civ. 3210 (KPF), 2020 WL 3447989 (S.D.N.Y. June 24, 2020)..........................14

*Canez v. Intelligent Systems Corp.*,
    No. 19-CV-3949 (RPK) (CLP), 2021 WL 3667012 (E.D.N.Y. Aug. 18, 2021) ..............22

*Chapman v. Mueller Water Products, Inc.*,
    466 F. Supp. 3d 382 (S.D.N.Y. 2020)..............................................................................22

*City of Coral Springs Police Officers' Retirement Plan v. Farfetch Ltd.*,
    565 F. Supp. 3d 478 (S.D.N.Y. 2021)..............................................................................14

*City of Riviera Beach General Employees Retirement System v. Macquarie Infrastructure Corp.*,
    No. 18-CV-3608 (VSB), 2021 WL 4084572 (S.D.N.Y. Sept. 7, 2021), *appeal docketed*, No. 21-2524 (2d Cir. Oct. 7, 2021)..................................................................18

*In re Curaleaf Holdings, Inc. Securities Litigation*,
    519 F. Supp. 3d 99 (E.D.N.Y. 2021) ............................................................................3, 13

*In re Diebold Nixdorf, Inc., Securities Litigation*,
    No. 19-CV-6180 (LAP), 2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021)..........................20

iv

*Diehl v. Omega Protein Corp.*,
  339 F. Supp. 3d 153 (S.D.N.Y. 2018)....................................................................12, 13, 18

*In re Eastman Kodak Co. Securities Litigation*,
  No. 6:21-CV-6418 EAW, 2022 WL 4473629 (W.D.N.Y. Sept. 27, 2022),
  *appeal docketed*, No. 22-2788 (2d Cir. Oct. 31, 2022)....................................................14

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)...........................................................................3, 19, 21, 24

*In re Express Scripts Holdings Co. Securities Litigation*,
  773 F. App'x 9 (2d Cir. 2019) .....................................................................................14, 16

*Fort Worth Employers' Retirement Fund v. Biovail Corp.*,
  615 F. Supp. 2d 218 (S.D.N.Y. 2009).................................................................................25

*Friedman v. Endo International PLC*,
  No. 16-CV-3912 (JMF), 2018 WL 446189 (S.D.N.Y. Jan. 16, 2018) .......................11, 14

*Greco v. Qudian Inc.*,
  No. 1:20-cv-577-GHW, 2022 WL 4226022 (S.D.N.Y. Sept. 13, 2022) ....................10, 17

*Gutman v. Lizhi Inc.*,
  No. 21-CV-317 (LDH) (PK), 2022 WL 4646471 (E.D.N.Y. Oct. 1, 2022)..................3, 17

*In re HEXO Corp. Securities Litigation*,
  524 F. Supp. 3d 283 (S.D.N.Y. 2021)................................................................................19

*IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of
  Scotland Grp., PLC*,
  783 F.3d 383 (2d Cir. 2015).................................................................................................21

*In re ITT Educational Services, Inc. Securities & Shareholder Derivatives Litigation*,
  859 F. Supp. 2d 572 (S.D.N.Y. 2012)................................................................................12

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001)..................................................................................4, 21, 23

*Lipow v. Net1 UEPS Technologies, Inc.*,
  131 F. Supp. 3d 144 (S.D.N.Y. 2015).................................................................................14

*Marcu v. Cheetah Mobile Inc.*,
  No. 18-CV-11184 (JMF), 2020 WL 4016645 (S.D.N.Y. July 16, 2020) .........................22

*Menora Mivtachim Insurance Ltd. v. International Flavors & Fragrances Inc.*,
  No. 19 CIV. 7536 (NRB), 2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021),
  *aff'd sub nom. Menora Mivtachim Insurance Ltd. v. Frutarom Industries Ltd.*, 49
  F.4th 790 (2d Cir. 2022) ....................................................................................................12

*In re Neurotrope, Inc. Securities Litigation*,
　　315 F. Supp. 3d 721 (S.D.N.Y. 2018)..........................................................19, 23

*In re Plug Power, Inc. Securities Litigation*,
　　No. 21 CIV. 2004 (ER), 2022 WL 4631892 (S.D.N.Y. Sept. 29, 2022) ......................2, 23

*Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*,
　　11 F.4th 90 (2d Cir. 2021) ...........................................................................25

*Police & Fire Retirement System of Detroit v. La Quinta Holdings Inc.*,
　　No. 16-cv-3068 (AJN), 2017 WL 4082482 (S.D.N.Y. Aug. 24, 2017), *aff'd mem.*,
　　735 F. App'x 11 (2d Cir. 2018) ......................................................................16

*Rice as Trustee of Richard E. & Melinda Rice Revocable Family Trust 5/9/90 v. Intercept Pharmaceuticals, Inc.*,
　　No. 21-CV-0036 (LJL), 2022 WL 837114 (S.D.N.Y. Mar. 21, 2022)......................12, 23

*Rombach v. Chang*,
　　355 F.3d 164 (2d Cir. 2004).........................................................................21

*Santa Fe Industries, Inc. v. Green*,
　　430 U.S. 462 (1977)) .................................................................................21

*Schaffer v. Horizon Pharma, PLC*,
　　No. 16-CV-1763 (JMF), 2018 WL 481883 (S.D.N.Y. Jan. 18, 2018) ...........................13

*In re Seadrill Ltd. Securities Litigation*,
　　No. 14 CIV. 9642 (LGS), 2016 WL 3461311 (S.D.N.Y.
　　June 20, 2016)................................................................................ *passim*

*SEC v. Rio Tinto plc*,
　　No. 21-2042, 2022 WL 2760323 (2d Cir. July 15, 2022).............................................4, 25

*In re ShengdaTech, Inc. Securities Litigation*,
　　No. 11 Civ. 1918 (LGS), 2014 WL 3928606 (S.D.N.Y. Aug. 12, 2014).........................25

*Shetty v. Trivago N.V.*,
　　796 F. App'x 31 (2d Cir. 2019) ..................................................................18, 22

*Shields v. Citytrust Bancorp, Inc.*,
　　25 F.3d 1124 (2d Cir. 1994).........................................................................24

*In re Sina Corp. Securities Litigation*,
　　No. 05 CIV. 2154 (NRB), 2006 WL 2742048 (S.D.N.Y. Sept. 26, 2006)............10, 11, 16

*Steamfitters' Industry Pension Fund v. Endo International PLC*,
　　771 F. App'x 494 (2d Cir. 2019) ..................................................................17

*Stratte-McClure v. Morgan Stanley*,
  776 F.3d 94 (2d Cir. 2015)...............................................................................19

*In re Turquoise Hill Resources Ltd. Securities Litigation*,
  No. 13 CIV. 8846 (LGS), 2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) ........................25

*Venkataraman v. Kandi Technologies Group, Inc.*,
  No. 20 Civ. 8082 (LGS), 2021 WL 4952260 (S.D.N.Y. Oct. 25, 2021) ..........................22

*Vladimir v. Bioenvision Inc.*,
  606 F. Supp. 2d 473 (S.D.N.Y. 2009), *aff'd sub nom. Thesling v. Bioenvision,
  Inc.*, 374 F. App'x 141 (2d Cir. 2010) ..............................................................14

*In re Yunji Inc., Securities Litigation*,
  No. 19-CV-6403 (LDH) (SMG), 2021 WL 1439715 (E.D.N.Y. Mar. 31, 2021)..............17

**STATUTES**

15 U.S.C. § 78j(b) ...................................................................................................2, 25

15 U.S.C. § 78t(a) ..................................................................................................4, 25

15 U.S.C. § 78u-4(b)(1) ...............................................................................................9

**REGULATIONS**

17 C.F.R. § 229.303 ....................................................................................................17

17 C.F.R. § 240.10b-5(a) .............................................................................................24

17 C.F.R. § 240.10b-5(c) .............................................................................................24

**OTHER AUTHORITIES**

Amended Complaint, *Ben & Jerry's Homemade, Inc. v. Conopco, Inc.*, No. 1:22-cv-
  05681 (ALC) (S.D.N.Y. Sept. 30, 2022), ECF No. 58 ....................................................8

Brad Edmondson, *Ice Cream Social: The Struggle for the Soul of Ben &
  Jerry's* (2014).......................................................................................................5

David Gram, *Ben & Jerry's Sells Out to Unilever*, AP NEWS (Apr. 12, 2000),
  https://apnews.com/article/f548fe84bc3a3991988db1a9ae59a114 ....................................6

Constance L. Hays, *Ben & Jerry's To Unilever, With Attitude*, N.Y. TIMES (Apr. 13,
  2000), https://www.nytimes.com/2000/04/13/business/ben-jerry-s-to-unilever-
  with-attitude.html....................................................................................................6

Memorandum of Law in Support of Motion to Dismiss, *Ben & Jerry's Homemade, Inc. v.
  Conopco, Inc.*, No. 1:22-cv-05681 (ALC) (S.D.N.Y. Dec. 2, 2022), ECF No. 76..............8

Antony Page & Robert A. Katz, *Freezing Out Ben & Jerry: Corporate Law and the Sale of A Social Enterprise Icon*, 35 Vt. L. Rev. 211 (2010) ........................................................6

Alicia E. Plerhoples, *Can an Old Dog Learn New Tricks? Applying Traditional Corporate Law Principles to New Social Enterprise Legislation*, 13 Transactions: Tenn. J. Bus. L. 221 (2012).....................................................................6

Defendant Unilever PLC ("Unilever" or the "Company"), and Defendants Alan Jope, Ritva Sotamaa and Graeme Pitkethly (the "Individual Defendants," and together with Unilever, the "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the amended complaint (ECF No. 29, the "AC").[1]

## PRELIMINARY STATEMENT

In 2000, Unilever, one of the world's largest consumer products companies, acquired ice cream maker Ben and Jerry's Homemade, Inc. ("Ben & Jerry's"), which was and continues to be well-known for its commitment to certain social causes. As Plaintiffs note, the acquisition as an indirect wholly-owned subsidiary was structured with some unusual features, including that Ben & Jerry's would maintain a limited-purpose board of directors with certain enumerated responsibilities pertaining to the company's social mission (the "B&J Limited Board"). In July 2020, the B&J Limited Board passed a resolution (the "Resolution") taking sides in the Israeli-Palestinian conflict by seeking to end sales of Ben & Jerry's ice cream in the West Bank. According to Plaintiffs, this decision sparked a year-long debate between Unilever and the B&J Limited Board over "whether and how" to implement it. (AC ¶¶ 4, 41, 56, 68, 75, 81, 107.) Then, in July 2021, Ben & Jerry's announced on its website and through its Twitter account that:

> We believe it is inconsistent with our values for Ben & Jerry's ice cream to be sold in the Occupied Palestinian Territory (OPT). . . . We have a longstanding partnership with our licensee, who manufactures Ben & Jerry's ice cream in Israel and distributes it in the region. We have been working to change this, and so we have informed our licensee that we will not renew the license agreement when it expires at the end of next year. Although Ben & Jerry's will no longer be sold in the OPT, we will stay in Israel through a different arrangement. We will share an update on this as soon as we're ready.

---

[1] Capitalized terms used herein and not defined shall have the meaning assigned to them in the AC.

(Ex. 1.[2])

Based on this announcement, which was far from the final word on this subject, Plaintiffs manufacture a claim against Ben & Jerry's parent, Unilever, under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b). Plaintiffs wish to impose a disclosure obligation on Unilever notwithstanding that the Resolution remained subject to debate as to whether it would be implemented (and although ultimately its effect was essentially nullified by a transaction that allowed Avi Zinger ("Zinger"), Ben & Jerry's longstanding Israeli licensee, to continue sales in Israel and the West Bank, as sole proprietor of the Ben & Jerry's Hebrew and Arabic trademarks (AC ¶ 97)).[3] Moreover, Plaintiffs do not allege facts to support that the announcement had a negative impact on Ben & Jerry's financial results, let alone on Unilever, or changed the risks to Unilever as a whole. (*E.g.*, *id.* ¶¶ 54-55.) It did, however, inject Unilever into a political debate it did not choose to enter, resulting in certain state pension funds "announc[ing] decisions to divest their state's pension fund investments in Unilever." (*Id.* ¶ 95.)

Recognizing there was no independent duty to disclose the Resolution, Plaintiffs search in vain Unilever's public statements to find any affirmative statements. Finding nothing, and without any confidential witnesses in support, Plaintiffs ultimately grasp onto certain high level Unilever risk disclosures relating to customer, ethical and legal risks that Unilever faced. These risk

---

[2] "Ex." refers to exhibits submitted with the Declaration of Susan L. Saltzstein in Support of the Motion to Dismiss, filed herewith. On a motion to dismiss, the Court may consider documents that are either incorporated by reference or subject to judicial notice. Exhibits 1, 3, 8-10 and 12 are incorporated by reference into the AC and are relied on by Plaintiffs to establish their claims. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). All exhibits are subject to judicial notice as they are materials in the public record, *In re Plug Power, Inc. Sec. Litig.*, No. 21 CIV. 2004 (ER), 2022 WL 4631892, at *9 (S.D.N.Y. Sept. 29, 2022), SEC filings, *In re Seadrill Ltd. Sec. Litig.*, No. 14 CIV. 9642 (LGS), 2016 WL 3461311, at *3 (S.D.N.Y. June 20, 2016), or filings in other litigations, *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 (2d Cir. 2022).

[3] Plaintiffs' allegations rest on their own conjecture that it is "difficult to understand" how Unilever would have remained in Israel through a different arrangement. (*See* AC ¶¶ 49-51.) But what they fail to explain is how the sale of assets to Zinger did not do just that.

disclosures did precisely what they intended; they adequately warned investors of the risks facing the company. *In re Curaleaf Holdings, Inc. Sec. Litig.*, 519 F. Supp. 3d 99, 107 (E.D.N.Y. 2021) (Listing Statements adequately identified risk of investing in Company that sells CBD products). And none of these risk disclosures make affirmative statements about Ben & Jerry's, much less about its affiliates in Israel or the West Bank. Unilever's disclosures were both truthful and accurate when made, and were in no way undermined by the purported failure to disclose the Resolution. Plaintiffs' claims fail for at least the following reasons.

**Plaintiffs fail to plead an actionable misstatement or omission.** (*See infra* Section I.) First, Defendants had no duty to disclose the Resolution or the ensuing debate for at least five reasons: (1) the Resolution and corporate debate do not render any statements false or misleading; (2) Plaintiffs' attempts to undermine the risk disclosures are unavailing; (3) there is no duty to disclose inchoate policies when Defendants made no relevant affirmative statements; (4) the existence and nature of the B&J Limited Board was disclosed and well-known; and (5) Plaintiffs may not substitute their preferences for the judgment of the Company regarding the timing of the announcement. Nor did Regulation S-K require disclosure because Plaintiffs cannot establish that there was any trend or uncertainty under Item 303 – as opposed to a corporate strategy debate – much less one that actually was known to management or reasonably likely to have material effects on Unilever's financial condition. *See Gutman v. Lizhi Inc.*, No. 21-CV-317 (LDH) (PK), 2022 WL 4646471, at *4 (E.D.N.Y. Oct. 1, 2022).

Second, Plaintiffs cannot plead that the alleged omission was material. There are no allegations to suggest that an action taken by one of Unilever's over 400 brands would have a material impact on the Company as a whole, or that announcement of that action significantly would alter the total mix of information available regarding Unilever. *ECA, Loc. 134 IBEW Joint*

*Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009).

**Plaintiffs cannot plead scienter with respect to any Defendant.** (*See infra* Section II.)
Plaintiffs do not plead motive or opportunity. Instead, Plaintiffs' entire theory of scienter is that
Defendants knew about the Resolution, but failed to disclose it until a year after it was passed,
which they claim is evidence of conscious misbehavior or recklessness. Their theory fails. Even
assuming *arguendo* that Defendants were aware of the *Resolution* at the time of any of the
challenged statements, this does not mean Defendants knew their *risk disclosures* were false. There
are no factual allegations to infer that Unilever (or any of the Individual Defendants) believed there
was a duty to disclose the Resolution before they did so. *See Kalnit v. Eichler*, 264 F.3d 131, 143
(2d Cir. 2001) (no scienter where duty to disclose unclear); *see also In re Seadrill Ltd. Sec. Litig.*,
No. 14 CIV. 9642 (LGS), 2016 WL 3461311, at *13 (S.D.N.Y. June 20, 2016) (Schofield, J.)
(same). Moreover, Plaintiffs' proffered inference is not cogent or at least as compelling as the non-
fraudulent inferences – namely, *inter alia*, (1) Defendants were engaged in active internal debate
and believed it would be premature to disclose the Resolution before a decision was reached; and
(2) Defendants reasonably believed sales by Ben & Jerry's in Israel and the West Bank, even if
terminated, were immaterial to Unilever as a whole.

**Plaintiffs' Rule 10b-5(a) and (c) claims should be dismissed.** (*See infra* Section III.)
Plaintiffs' claim that Defendants made misrepresentations or omissions, even if adequately
pleaded (which it is not), does not suffice to plead scheme liability. *See SEC v. Rio Tinto plc*, No.
21-2042, 2022 WL 2760323, at *1 (2d Cir. July 15, 2022) (citing *Lentell v. Merrill Lynch & Co.,
Inc.*, 396 F.3d 161 (2d Cir. 2005)).

**Plaintiffs' do not state a Section 20(a) claim.** (*See infra* Section IV.) Finally, Plaintiffs'
control person claims under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), fail because

Plaintiffs fail to plead any primary liability under Section 10(b), or how the Individual Defendants were culpable participants in any violation.

For these reasons, and as discussed more fully below, the AC should be dismissed in its entirety with prejudice.

## STATEMENT OF FACTS

### A.    Unilever, Ben & Jerry's and the B&J Limited Board

Unilever, headquartered in London, England, is one of the world's largest consumer products companies and sells over 400 brands in over 190 countries. (AC ¶¶ 2, 16, 24.) In 2000, Unilever acquired Ben & Jerry's (the "Merger"). (*Id.* ¶¶ 3, 28.) Prior to the Merger, Ben & Jerry's long had been known as a company interested and involved in certain social causes. (*Id.* ¶ 3.) Indeed, Ben & Jerry's established a three-part mission, including the Social Mission – "to use the company in innovative ways to make the world a better place." (*Id.* ¶ 27.) Before the Merger, Ben & Jerry's pursued this Social Mission in various ways, such as launching a legal campaign against bovine growth hormones, introducing Peace Pops as part of a campaign against landmines and searching for and implementing fair trade ingredients. (Ex. 2.)

Even after the Merger, this Social Mission was to be preserved, in part, by the establishment of the B&J Limited Board. (AC ¶¶ 3, 29, 33.) This "unusual feature[]" (*id.* ¶¶ 3, 29) – the existence of a limited-purpose board, focused on the Social Mission of Ben & Jerry's – was a well-known aspect of the Merger Agreement, which was publicly filed with the SEC. (Ex. 3.) Ben & Jerry's also released a press release at the time of the Merger regarding the "unique and ground-breaking combination" and said "[t]here will be an independent Board of Directors, which will focus on providing leadership for Ben & Jerry's social mission . . . ." (Ex. 4.)

In addition, the unique nature of the Merger was subject to a great deal of press and attention, including news articles, books and law review articles. *E.g.*, Brad Edmondson, *Ice*

*Cream Social: The Struggle for the Soul of Ben & Jerry's* (2014); Antony Page & Robert A. Katz,

*Freezing Out Ben & Jerry: Corporate Law and the Sale of A Social Enterprise Icon*, 35 Vt. L.

Rev. 211 (2010); Alicia E. Plerhoples, *Can an Old Dog Learn New Tricks? Applying Traditional*

*Corporate Law Principles to New Social Enterprise Legislation*, 13 Transactions: Tenn. J. Bus. L.

221 (2012); David Gram*, Ben & Jerry's Sells Out to Unilever*, AP NEWS (Apr. 12, 2000),

https://apnews.com/article/f548fe84bc3a3991988db1a9ae59a114; Constance L. Hays, *Ben &*

*Jerry's To Unilever, With Attitude*, N.Y. TIMES (Apr. 13, 2000),

https://www.nytimes.com/2000/04/13/business/ben-jerry-s-to-unilever-with-attitude.html.

Since the Merger, the B&J Limited Board has advanced the Social Mission by engaging in advocacy concerning certain issues, such as "the environment, voter turnout, fair trade, and genetically modified organisms." (AC ¶ 33.) Ben & Jerry's also occasionally (and publicly) gets involved in what have been described as "controversial" social causes. (Ex. 5.) For example, in recent years, Ben & Jerry's created an ice cream flavor, "PeCAN Resist," as a challenge to the Trump administration's policies (Ex. 6), and called out the UK interior minister on Twitter over treatment of migrants (Ex. 7). Ben & Jerry's activism is discussed frequently, including in documents Plaintiffs cite. (Ex. 8; Ex. 9.)

**B.      Ben & Jerry's Preexisting Business in Israel**

Prior to the Merger, Ben & Jerry's had a license relationship dating back to 1987 with Zinger and his affiliated companies, including American Quality Products Ltd. ("AQP") (the "AQP License Agreement"). (AC ¶ 34.) "The AQP License Agreement provided AQP with the exclusive right to manufacture and distribute Ben & Jerry's ice cream throughout the State of Israel and the '[O]ccupied [T]erritories'" and was set to expire on December 31, 2022. (*Id.*)

**C.      The B&J Limited Board Purportedly Resolves to End Sales in the West Bank**

According to the AC, starting around 2014, outside organizations began pressuring Ben &

Jerry's to stop selling its ice cream in Israel. (AC ¶ 35.) "Since then, the [B&J Limited Board] organized multiple trips to the region and appointed a special committee to review the issue." (*Id.*) On the other hand, between 2018 and 2021, the Israeli distributor urged against any cessation, offering its view that it would be a violation of Israel's anti-discrimination and anti-boycott laws and subject the distributor to penalties. (*Id.* ¶ 36.)

In July 2020, the B&J Limited Board passed a Resolution regarding sales in Israel and/or the West Bank. Depending on which part of the AC you credit, the Resolution (1) decided against renewal of the AQP License Agreement and to "end sales of Ben & Jerry's ice cream in the portions of Israel that the B&J Limited Board considered to be Palestinian territories that are illegally occupied by Israel" (*Id.* ¶ 39; *see also, e.g.*, *id.* at 4, 56, 68, 81); (2) "direct[ed] the Ben & Jerry's CEO to cease selling products" in the West Bank (Ex. 10[4] ¶ 10); or (3) decided to end sales in the region altogether, including in the State of Israel itself (AC ¶¶ 44-45).

The Resolution, whatever it actually purportedly resolved to do, was not implemented immediately. (*Id.* ¶¶ 8, 40.) Instead, the AC alleges that Unilever, Ben & Jerry's CEO, Matthew McCarthy and the B&J Limited Board "debate[d] ***whether*** and how to implement the Board's desired changes." (*Id.* ¶ 41 (emphasis in original).) "In other words, Unilever *disagreed with the [B&J Limited Board's] decision . . .* " (*Id.* (emphasis added).) On July 19, 2021, Ben & Jerry's announced the intention to end sales in the West Bank by not renewing the license agreement with Zinger when it expired on December 31, 2022, but to stay in Israel through a different arrangement. (*Id.* ¶ 42.) At the time of the announcement, a decision on "whether and how to implement" the

---

[4] Ex. 10 is the Declaration of Matt Close in Support of Defendant Conopco, Inc.'s Opposition to Plaintiff's Application for Preliminary Injunctive Relief, *Ben & Jerry's Homemade Inc. v. Conopco, Inc.*, No. 1:22-cv-05681 (ALC) (S.D.N.Y. July 11, 2022), ECF No. 31, submitted in connection with the action pending before Judge Carter, discussed below. This document was incorporated by reference into the AC, used in at least six paragraphs.

Resolution had yet to be made. (*Id.* ¶¶ 4, 41, 56, 68, 75, 81, 107.)

**D.    Post-Announcement Events**

The July 2021 announcement of Ben & Jerry's intention to stop selling in the West Bank was met with divergent reactions. (Ex. 12.) Some states decided to divest their Unilever pension fund investments (AC ¶ 95); however, the AC does not allege that these divestitures were material.

Unilever also was sued by Zinger and AQP over the announcement, which litigation settled shortly thereafter with an announcement that the Company had sold its Ben & Jerry's business interests in Israel to Zinger. (*Id.* ¶¶ 96-97.) The announcement made clear that the "new arrangement" would "ensure the ice cream stays available to all consumers." (*Id.* ¶ 97.) "The new arrangement mean[t] Ben & Jerry's will be sold under its Hebrew and Arabic names throughout Israel and the West Bank under the full ownership of its current licensee." (*Id.*)

Finally, Unilever was sued by members of the B&J Limited Board in an action currently pending before Judge Carter, *Ben & Jerry's Homemade Inc. v. Conopco, Inc.*, No. 1:22-cv-05681 (ALC) (S.D.N.Y. filed July 5, 2022). An amended complaint was filed on September 30, 2022, *see* Amended Complaint, *Ben & Jerry's Homemade, Inc. v. Conopco, Inc.*, No. 1:22-cv-05681 (ALC) (S.D.N.Y. Sept. 30, 2022), ECF No. 58, and Unilever and the other named defendants filed their motion to dismiss on December 2, 2022, *see* Memorandum of Law in Support of Motion to Dismiss, *Ben & Jerry's Homemade, Inc. v. Conopco, Inc.*, No. 1:22-cv-05681 (ALC) (S.D.N.Y. Dec. 2, 2022), ECF No. 76. One of the issues litigated in that case concerned the scope of the authority of the B&J Limited Board. *See id.* On December 15, 2022, Unilever announced "that the litigation with Ben & Jerry's Independent Board has been resolved." (Ex. 13.)

Although the July 2021 announcement regarding activities in Israel and the West Bank led to the aforementioned skirmishes among Unilever, Ben & Jerry's and Zinger/AQP, these issues

"were not material to Unilever's global business as a whole." (Ex. 10 ¶ 16.) Ben & Jerry's grew 7% percent in 2021, and Unilever's underlying sales growth was 4.5%, reflecting Unilever's fastest underlying sales growth in nine years. (Ex. 11.)

## E.   The Amended Complaint

Plaintiffs filed the operative amended complaint on October 31, 2022. Plaintiffs assert claims against Unilever and certain of its officers for violations of Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder on behalf of all persons who purchased or otherwise acquired Unilever American Depositary Receipts ("ADRs") between September 2, 2020 and July 21, 2021 (the "Class Period"). (AC ¶ 1.) Plaintiffs in essence claim that Defendants were required to disclose the Resolution sooner than they did, as well as the resulting corporate debate, because certain unrelated general Unilever risk disclosures purportedly were rendered misleading by the omission of that information. (*See id.* ¶¶ 52-84.)

## ARGUMENT

The demanding pleading standards applicable to securities fraud claims under Section 10(b) of the Exchange Act are well-settled. *See Seadrill*, 2016 WL 3461311, at *6. "Under the [PSLRA] and Federal Rule of Civil Procedure 9(b), allegations of material misstatements must be 'state[d] with particularity,'" *Bristol-Myers Squibb Co.*, 28 F.4th at 353 (second alteration in original) (citation omitted), and Plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading and, if an allegation regarding the statement or omission is made on information and belief, [] state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Plaintiffs do not come close to meeting these demanding pleading standards, and the AC ought to be dismissed.

## I.   PLAINTIFFS DO NOT PLEAD AN ACTIONABLE FALSE OR MISLEADING MISSTATEMENT OR OMISSION

At bottom, Plaintiffs allege Defendants should have disclosed the Resolution earlier than they did, and that Defendants should have disclosed the internal debate occurring at the Company regarding the Resolution. Unable to point to any affirmative statements from the Company regarding, for example, an intention to stay in Israel or the West Bank indefinitely (because no such statements exist), Plaintiffs instead rely on Defendants' general risk disclosures contained in the 2019 and 2020 20-F Annual Reports, which were also incorporated into certain other Unilever filings. (AC ¶¶ 52-84.) But these statements adequately warned investors as to risks to Unilever's business as a whole, and make no affirmative representations at all concerning Ben & Jerry's or ice cream. In sum, Plaintiffs do not (1) establish that Defendants had a duty to disclose the purportedly omitted information and (2) plead the purported omissions were material.

### A.   Plaintiffs Do Not Allege Defendants Had a Duty to Disclose the Purportedly Omitted Information.

It is well-established that "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b-5," *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988), and that "[d]isclosure of an item of information is not required . . . simply because it may be relevant or of interest to a reasonable investor." *In re Sina Corp. Sec. Litig.*, No. 05 CIV. 2154 (NRB), 2006 WL 2742048, at *6 (S.D.N.Y. Sept. 26, 2006) (alterations in original) (quoting *Resnick v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002)). Rather, for an omission to be actionable, "a plaintiff must allege both that the defendant had a duty to disclose the information, and that the omitted information would have been material to investors." *Boluka Garment Co., Ltd. v. Canaan Inc.*, 547 F. Supp. 3d 439, 448 (S.D.N.Y. 2021). Plaintiffs here allege neither. A duty to disclose will arise only if (1) an omission is required to make other statements not misleading; or (2) a statute or regulation imposes a duty to disclose. *See Greco v. Qudian Inc.*, No. 1:20-cv-577-GHW, 2022 WL 4226022, at *8 (S.D.N.Y.

Sept. 13, 2022). Plaintiffs here satisfy neither standard.

      1.    <u>The Company's risk disclosures were not misleading for failure to disclose the Resolution.</u>

Plaintiffs cannot allege that the Company was required to disclose the Resolution "'to make [any] statements made, in light of the circumstances under which they were made, not misleading.'" *Sina Corp.*, 2006 WL 2742048, at \*6 (citing 17 C.F.R. § 240.10b-5). Unable to locate any affirmative statements concerning Ben & Jerry's business in Israel, Plaintiffs latch on to certain risk disclosures, including that:

- "[f]ailure to maintain strong relationships with customers could negatively impact our terms of business with affected customers and reduce the availability of our products to consumers" (*e.g.*, AC ¶¶ 53, 65, 78);

- "[a]cting in an ethical manner, consistent with the expectations of customers, consumers and other stakeholders, is essential for the protection of the reputation of Unilever and its brands" (*e.g.*, *id.* ¶¶ 54, 66, 79); and

- "[c]ompliance with laws and regulations is an essential part of Unilever's business operations" (*e.g.*, *id.* ¶¶ 55, 67, 80).

Plaintiffs cannot rely on these risk disclosures for several independent reasons.

<u>First</u>, these risk disclosures – which concern Unilever's overall global business – do not represent that Ben & Jerry's sales of ice cream would continue to operate within Israel and the West Bank. As such, they are too attenuated from the Resolution to impose any duty to disclose. Ben & Jerry's business in Israel and the West Bank is just one small part of Unilever's global business, and is not connected to the challenged statements, which caution about the importance of maintaining customer relationships (AC ¶ 53, 65, 78), acting in an ethical manner (*id.* ¶ 54, 66, 79) and compliance with laws and regulations (*id.* ¶ 55, 67, 80). Accordingly, Defendants were under no duty to disclose the Resolution. *Friedman v. Endo Int'l PLC*, No. 16-CV-3912 (JMF), 2018 WL 446189, at \*5 (S.D.N.Y. Jan. 16, 2018) (dismissing claims where plaintiffs did not allege "any rational connection between the omitted information and the statements made"); *see also*

11

*Seadrill*, 2016 WL 3461311, at *9 (general statements about sanctions did not trigger a duty to disclose the status of the company's application for exemption from sanctions).[5] Indeed, "[g]eneric risk disclosures, like those at issue here, are unlikely to mislead a reasonable investor." *Diehl v. Omega Protein Corp.*, 339 F. Supp. 3d 153, 164 (S.D.N.Y. 2018).

Second, Plaintiffs' attempts to connect the Company's risk disclosures to the Resolution are unavailing. Plaintiffs, for instance, conclusorily allege that the purported failure to disclose the Resolution rendered Unilever's stated customer risks misleading because Unilever had acknowledged the importance of maintaining its customer relationships, but that the Resolution "risked reduced sales and a customer backlash." (AC ¶¶ 56, 68, 81.) However, Plaintiffs do not cite any actual reduced sales or overall customer backlash at Ben & Jerry's – let alone at the Unilever level. Plaintiffs also allege that not disclosing the Resolution and ensuing dispute between Unilever and Ben & Jerry's "risked damage to Unilever's reputation and ability to make future acquisitions." (*Id.*) However, again, Plaintiffs do not actually allege any damage to Unilever's reputation or that its future acquisitions were in any way impacted by the Resolution, and any such claims would be pure speculation. *See In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*, No. 08 Civ. 11278 (DLC), 2009 WL 4823923, at *6 (S.D.N.Y. Dec. 14, 2009) ("Allegations that are conclusory or unsupported by factual assertions are insufficient." (citation omitted)).

---

[5] *See also Rice as Tr. of Richard E. & Melinda Rice Revocable Fam. Tr. 5/9/90 v. Intercept Pharms., Inc.*, No. 21-CV-0036 (LJL), 2022 WL 837114, at *16 (S.D.N.Y. Mar. 21, 2022) (dismissing claim because there was no duty to disclose a safety concern related to use of a drug for one disease when making public statement about FDA application for use of the same drug to treat a different disease because the statement and omission were not "'sufficiently connected' . . . 'to make those public statements misleading'" (citation omitted)); *Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, No. 19 CIV. 7536 (NRB), 2021 WL 1199035, at *15 (S.D.N.Y. Mar. 30, 2021) (dismissing claim where connection between financial statements and allegedly omitted misconduct was too attenuated), *aff'd sub nom. Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, No. 21-1076, 2022 WL 17332303 (2d Cir. 2022); *In re ITT Educ. Servs., Inc. Sec. & S'holder Derivatives Litig.*, 859 F. Supp. 2d 572, 579 (S.D.N.Y. 2012) (dismissing claim where connection between the statements discussing reasons for financial success and alleged omission regarding "predatory recruitment practices" was "too tenuous" to render the statements misleading).

Further, Plaintiffs allege that omitting discussing the Resolution "risked adverse governmental actions for violations of U.S. Anti-BDS Legislation." (AC ¶ 56, 68, 81.) However, this fails for several reasons. First, even if Plaintiffs believed the passing of the Resolution created legal risks for Unilever, the risk disclosures are sufficient to alert investors to such a risk. *In re Curaleaf Holdings, Inc. Sec. Litig.*, 519 F. Supp. 3d 99, 107 (E.D.N.Y. 2021) (Listing Statements adequately identified risk of investing in Company that sells CBD products). Further, Defendants had no duty to disclose a possible future violation of laws prior to the July 2021 announcement because "'disclosure is not a rite of confession,' and companies do not have a duty 'to disclose uncharged unadjudicated wrongdoing.'" *E.g.*, *Diehl*, 339 F. Supp. 3d at 164-65 (citation omitted);[6] *Schaffer v. Horizon Pharma, PLC*, No. 16-CV-1763 (JMF), 2018 WL 481883, at *8 (S.D.N.Y. Jan. 18, 2018). Nor was the "description of Unilever's legal risk" purportedly false and misleading because "Unilever acknowledged that complying with all applicable laws and regulations is important but omitted disclosing [Ben & Jerry's] boycott decision which risked adverse governmental action for violation of U.S. Anti-BDS Legislation." (AC ¶ 56, 68, 81.) The AC is wholly bereft of any claim that Unilever did not believe in the importance of compliance with laws and regulation notwithstanding the position purportedly adopted by its subsidiary. Moreover, that various states are alleged to have reacted against that policy stance does not render Ben & Jerry's actions or the timing of the announcement unlawful.[7]

Third, where, as here, no specific or affirmative statements on the subject have been made,

---

[6] *Diehl*, 339 F. Supp. 3d 153, 164-65 is instructive. There, plaintiff challenged the parent's risk disclosure that if its subsidiary failed to comply with the terms of its probation, the parent could be subject to criminal prosecution. Plaintiff alleged the risk disclosure was misleading because the subsidiary was actually violating those terms. *Id.* The court found the disclosure was not misleading because "[n]o reasonable investor would have construed these generic risk disclosures as representations that [the subsidiary] had conducted itself in a manner that negated the risk of future adverse action, including a claim that it had violated the terms of its probation." *Id.*

[7] To the extent Plaintiffs' allegations rely on risks of violation of Israeli law (*e.g.*, AC ¶¶ 36-39, 49-51), Plaintiffs do not allege that the inchoate Resolution led to any action by the Israeli government.

companies are under no duty to disclose inchoate policies or business strategies. This is true whether a company is in negotiations with counterparties over the policy or proposal, *e.g.*, *In re Express Scripts Holdings Co. Sec. Litig.*, 773 F. App'x 9, 13-14 (2d Cir. 2019); *Vladimir v. Bioenvision Inc.*, 606 F. Supp. 2d 473, 485 (S.D.N.Y. 2009), *aff'd sub nom. Thesling v. Bioenvision, Inc.*, 374 F. App'x 141 (2d Cir. 2010), or a potential course of action is undecided and still subject to *internal* discussions and debate, *see City of Coral Springs Police Officers' Ret. Plan v. Farfetch Ltd.*, 565 F. Supp. 3d 478, 495 (S.D.N.Y. 2021). A company has no duty to disclose every potential course of action, or any change thereto, in particular where, as here, the company has made no affirmative promises to the contrary. *See id.* ("'It is . . . well established that a company has no such duty to disclose changes to its business plans' unless the plaintiff plausibly alleges that 'a company had stated its intention to adhere exclusively to a particular strategy and then changed its strategy without informing investors.'" (omission in original) (citations omitted)); *see also Friedman*, 2018 WL 446189, at *6 ("It is equally well established that a company has no such duty to disclose changes to its business plans—unless the company 'had "hyped" a specific plan, thereby inducing investors to believe that alternative[ ] [plans] were excluded.'" (alterations in original) (citation omitted)); *Bratusov v. Comscore, Inc.*, No. 19 Civ. 3210 (KPF), 2020 WL 3447989, at *12 (S.D.N.Y. June 24, 2020) (dismissing action where complaint failed to explain why disclosure of internal strategy disagreement was necessary in order to render the alleged misstatements not misleading). Nor is there a duty to disclose "where an outcome is merely speculative." *Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 170 (S.D.N.Y. 2015); *accord In re Eastman Kodak Co. Sec. Litig.*, No. 6:21-CV-6418 EAW, 2022 WL 4473629, at *11 (W.D.N.Y. Sept. 27, 2022), *appeal docketed*, No. 22-2788 (2d Cir. Oct. 31, 2022).

The unsettled nature of any decision about the Resolution is clear from the AC. As the AC

alleges: (1) the license agreement with the Israeli distributor had been in place since 1987 (AC ¶ 34); (2) organizations had been calling upon Ben & Jerry's to stop selling ice cream in Israel since 2014 (*id.* ¶ 35); (3) "since then, the [B&J Limited Board] organized multiple trips to the region and appointed a special committee to review the issue" (*id.*); (4) the Israeli distributor had raised concerns with Ben & Jerry's about ceasing sales in the West Bank since 2018 (*id.* ¶ 36); (5) Ben & Jerry's CEO chose not to operationalize the Resolution immediately (*id.* ¶ 40); (6) Unilever disagreed with the Resolution (*id.* ¶ 41); and (7) the license at issue did not expire until the end of 2022, giving the Company time to determine its next step (*id.* ¶ 34). This paints the picture of an uncertain and ever-developing series of events that had been and continued to be debated. Against this backdrop, with uncertainty surrounding the outcome, any ultimate decision by Unilever unknown, and with the contested nature of the authority of the B&J Limited Board, Defendants had no duty to disclose because there was no information to disclose that might have been useful to any reasonable investor in light of the fluid and dynamic nature of the discussions. Indeed, in view of the AC's allegations, one has trouble conceiving what a timely disclosure would even look like in Plaintiffs' view.[8] The unknown and uncertain nature of the Resolution is further underscored by the variation in Plaintiffs' own allegations, at times referring to the Resolution as one to end sales in the Occupied Territories and elsewhere claiming the Resolution in fact was meant to end sales in all of Israel. (*Compare* AC ¶ 39, *with id.* ¶¶ 44-45.) Moreover, Plaintiffs attempt to use the disagreement and debate between Unilever and Ben & Jerry's as part of their

---

[8] If anything, the AC suggests that the Company disclosed the Resolution *earlier* than it needed to. The AC alleges that after the Class Period ended, Zinger sued Unilever regarding the announcement. This lawsuit was settled in June 2022 with the sale "of Ben & Jerry's business interests in Israel to Avi Zinger," meaning "Ben & Jerry's will be sold under its Hebrew and Arabic names throughout Israel and the West Bank under the full ownership of its current licensee." (AC ¶ 97.) Prior to that time, the decision of how to handle the Resolution had still not been made, as evidenced by the language of Ben & Jerry's announcement. (*Id.* ¶ 42 ("Although Ben & Jerry's will no longer be sold in the OPT, we will stay in Israel through a different arrangement. ***We will share an update on this as soon as we're ready***." (emphasis added)).)

claims, asserting that Defendants' failure to disclose the dispute rendered the risk disclosures misleading. (*Id.* ¶¶ 56, 68, 81.) But instead, this internal debate counsels *against* premature disclosure and shows that the situation was evolving over time. *E.g.*, *Boluka*, 547 F. Supp. 3d at 449; *Seadrill*, 2016 WL 3461311, at *10.

Fourth, "[t]here can be no omission where the allegedly omitted facts are disclosed." *Seadrill*, 2016 WL 3461311, at *9. To the extent Plaintiffs' allegations rest on the potential controversy surrounding the "unique" structure (*e.g.*, AC ¶¶ 3, 29) of the B&J Limited Board and that they might take controversial positions, those facts were fully disclosed at the time of the Merger. (Ex. 3; Ex. 4; *see also* AC ¶¶ 3, 26-30).

Finally, the Resolution was disclosed, and Plaintiffs may not substitute their judgment over that of the Company as to *when* the Resolution should have been disclosed. The timing of disclosure is a matter left to the sound discretion of the Company, subject to the affirmative disclosure requirements promulgated by the exchanges and the SEC. *Police & Fire Ret. Sys. of Detroit v. La Quinta Holdings Inc.*, No. 16-cv-3068 (AJN), 2017 WL 4082482, at *10 (S.D.N.Y. Aug. 24, 2017), *aff'd mem.*, 735 F. App'x 11 (2d Cir. 2018). Plaintiffs' after-the-fact claim that Unilever should have disclosed the Resolution sooner is nothing more than an attempt to plead fraud by hindsight. "[D]efendants' lack of clairvoyance simply does not constitute securities fraud." *Sina*, 2006 WL 2742048, at *8 (citation omitted); *see also In re Express Scripts*, 773 F. App'x at 15 ("Allegations, like these, 'that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud.'" (citation omitted)). This is particularly true where, as here, prior to the July 2021 announcement, Defendants are not alleged to have made *any affirmative statements* about their business in Israel or any promises to investors that they intended to stay there indefinitely, and

Plaintiffs instead attempt to fashion a claim out of Defendants' risk disclosures.

2.   Plaintiffs do not plead a violation of Item 303 of Regulation S-K.

Nor did Defendants have a duty to disclose the Resolution under any statute or regulation. Plaintiffs rely on Item 303 of Regulation S-K, 17 C.F.R. § 229.303, which requires disclosure of a trend or uncertainty that "is both (1) known to management and (2) reasonably likely to have material effects on the registrant's financial condition or results of operations." *Gutman v. Lizhi Inc.*, No. 21-CV-317 (LDH) (PK), 2022 WL 4646471, at *4 (E.D.N.Y. Oct. 1, 2022) (citation omitted).[9] But Plaintiffs cannot satisfy either element.

Plaintiffs make the same repetitive allegation here – that Unilever should have disclosed the Resolution and the debate over whether and how to implement it – as a known trend or uncertainty under Item 303. (AC ¶ 75.) Plaintiffs' claims first fail because a business strategy decision need not be disclosed under Item 303. *Steamfitters' Indus. Pension Fund v. Endo Int'l PLC*, 771 F. App'x 494, 498 (2d Cir. 2019) (no Item 303 violation for not disclosing decision to focus on one generics business model over another).

Moreover, Plaintiffs do not plead that Defendants knew the Resolution, if implemented, would have a material impact on Unilever's sales, revenue or income. *Gutman*, 2022 WL 4646471, at *5 ("The FAC contains no allegations demonstrating that Defendants knew before the IPO that COVID-19 or China's response was having, or would have, a material impact on its sales, revenue, or income.").[10] Item 303 "is not so broad as to require defendants to disclose uncertainties as

---

[9] Although Item 303 does not apply to foreign corporations, "the SEC has stated that its interpretations of Item 303 apply to Management Discussion & Analysis disclosures drafted pursuant to Item 5 of Form 20-F, which does apply to foreign corporations." *Greco*, 2022 WL 4226022, at *27 (citation omitted). For simplicity and because Item 5 and Item 303 are coextensive, we refer only to Item 303.

[10] *See also Greco*, 2022 WL 4226022, at *28 (S.D.N.Y. Sept. 13, 2022) ("Beyond stating that there were trends that [the Company] had the duty to disclose" Plaintiffs do not "explain why the alleged trends were reasonably likely to have a material impact on [the Company's] financial condition."); *In re Yunji Inc., Sec. Litig.*, No. 19-CV-6403 (LDH) *(cont'd)*

17

speculative as whether [a subsidiary's] conduct was reasonably likely to have material effects on [parent's] financial condition or on the results of [parent's] operations." *Diehl*, 339 F. Supp. 3d at 167. Plaintiffs do not (and cannot) plead that the Resolution was material to Unilever's overall business. *See City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*, No. 18-CV-3608 (VSB), 2021 WL 4084572, at *10 (S.D.N.Y. Sept. 7, 2021) (no Item 303 violation where plaintiff could not allege the probability or anticipated magnitude of an event at a subsidiary was enough to make it material at the parent level), *appeal docketed*, No. 21-2524 (2d Cir. Oct. 7, 2021); *see also Shetty v. Trivago N.V.*, 796 F. App'x 31, 33 (2d Cir. 2019) (no Item 303 violation where complaint was "silent as to the extent of the financial impact" and so the court could not "plausibly and reasonably infer" that the alleged trends "had any negative financial impact at all, let alone a material impact on Trivago's overall revenue such that Item 303 would require disclosure"). To the contrary, Ben & Jerry's saw growth of 7% in 2021, and Unilever reported its fastest underlying sales growth (4.5%) in nine years in 2021. (Ex. 11.)

Further, the dispute between the B&J Limited Board and Unilever over the implementation of the Resolution was still ongoing, which undermines any theory that Defendants knew the Resolution would have any material impact. *See Axar Master Fund, Ltd. v. Bedford*, 308 F. Supp. 3d 743, 758 (S.D.N.Y. 2018) ("Plaintiffs fail sufficiently to allege that defendants thought it was 'reasonably possible' or 'reasonably likely' that Republic would be found in breach of its code share agreements. Plaintiffs allege only that Republic had *begun negotiations* with Delta and United." (emphasis added)), *aff'd*, 806 F. App'x 35 (2d Cir. 2020).

Finally, even if Plaintiffs could establish a duty to disclose under Item 303 (which they

(SMG), 2021 WL 1439715, at *8 (E.D.N.Y. Mar. 31, 2021) ("Plaintiff does not allege facts by which this Court could make a plausible inference that [company] management was aware of impact [the] Marketplace would ultimately have on its revenue.").

cannot), the claims should still be dismissed for failure to plead materiality and scienter. (*See infra*,

Sections I.B., II); *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 107–08 (2d Cir. 2015) ("[A]

failure to make a required disclosure under Item 303 . . . is an omission that can serve as the basis

for a Section 10(b) securities fraud claim, *if the omission satisfies the materiality requirements . . .*

*and if all of the other requirements to sustain an action under Section 10(b) are fulfilled*."

(emphasis added)).

**B.    Plaintiffs Fail to Plead the Purported Omission Was Material.**

Even if Plaintiffs could allege any duty to disclose – and they cannot – their claims also

fail because they do not plead that the purportedly omitted information was material to Unilever.

"[I]n order for the misstatement to be material, there must be a substantial likelihood that the

disclosure of the omitted fact would have been viewed by the reasonable investor as having

significantly altered the total mix of information made available." *ECA, Loc. 134 IBEW Joint*

*Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009); *accord In re*

*Neurotrope, Inc. Sec. Litig.*, 315 F. Supp. 3d 721, 730 (S.D.N.Y. 2018) (Schofield, J.) (same).

"When contingent or speculative future events are at issue, the materiality of those events depends

on a balancing of both the indicated probability that the event will occur and the anticipated

magnitude of the event in light of the totality of company activity." *In re HEXO Corp. Sec. Litig.*,

524 F. Supp. 3d 283, 306 (S.D.N.Y. 2021) (citation omitted). Here, although Plaintiffs allege the

Resolution was passed, they also allege that there was a debate at the Company over "whether and

how to implement it" (AC ¶¶ 4, 41, 56, 68, 75, 81, 107), making it plainly contingent.

The decision in *Boluka Garment Co., Ltd. v. Canaan Inc.*, 547 F. Supp. 3d 439, 448–49

(S.D.N.Y. 2021) is instructive. There, plaintiff challenged the defendant's failure to disclose a

2019 deal whereby another company intended to purchase up to $150 million in blockchain

equipment from the defendant by the end of 2020. *Id.* at 448. The court found the deal was immaterial because it was nonbinding, and as such, the probability of an impact on defendant's financials at the time of the challenged regulatory filing "was so low or uncertain that it rendered the transaction immaterial." *Id.* at 449 (citation omitted). Further, the court found it immaterial because the magnitude was also ambiguous – "the press release did not specify exactly how much money [the other company] would end up spending." *Id.* The court went on to say "[g]iven the speculative nature of the agreement, no reasonable investor would have 'consider[ed] it important in deciding how to invest.'" *Id.* (first alteration in original) (citation omitted).

The same reasoning applies here. Even if there was a duty to disclose the Resolution (which there was not), failure to do so was immaterial. The Resolution purported to end sales of Ben & Jerry's ice cream in the West Bank. In light of the fact that treatment of the Resolution was still subject to debate, Plaintiffs do not sufficiently allege either probability or magnitude. This is unsurprising since, as Plaintiffs acknowledge, "Unilever is one of the world's largest consumer products companies, selling over 400 brands in 190 countries." (AC ¶ 2.) Although the AC contains self-serving allegations regarding Ben & Jerry's sales globally and in the United States (*id.* ¶ 31), it does not allege the proportion of (1) Ben & Jerry's sales that took place in Israel or the West Bank; (2) Unilever's sales made up by Ben & Jerry's; or (3) Unilever's sales made up by Ben & Jerry's specifically in Israel or the West Bank. In fact, the Close Declaration makes clear that "[w]hile the issues arising from Ben & Jerry's Israeli business were significant, they were not material to Unilever's global business as a whole." (Ex. 10 ¶ 16.)[11]

---

[11] Plaintiffs' post-class period allegations that, for example, the announcement of the Resolution received widespread publicity or garnered reactions by members of the Israeli government (*see, e.g.*, AC ¶¶ 93-94, 102) do not change that they do not and cannot allege harm to Unilever's financial results, nor do they bear on scienter. *See In re Diebold Nixdorf, Inc., Sec. Litig.*, No. 19-CV-6180 (LAP), 2021 WL 1226627, at *14 (S.D.N.Y. Mar. 30, 2021) (finding post-class period events did not support an inference of scienter). And, if the Court were to apply the SAB 99 test, assessing
*(cont'd)*

## II.     PLAINTIFFS FAIL TO PLEAD SCIENTER

Plaintiffs' claims should also be dismissed for the independent reason that the AC fails to allege a strong inference of scienter. Plaintiffs must "state with particularity [the] facts giving rise to a strong inference that the defendant acted with the required state of mind." *Rombach v. Chang*, 355 F.3d 164, 176 (2d Cir. 2004) (alteration in original) (quoting 15 U.S.C. § 78u-4(b)(2)(A)) (quoting 15 U.S.C. § 78u-4(b)(2)). Scienter can only be pled through particularized factual allegations showing either "(1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *Bristol-Myers Squibb Co.*, 28 F.4th at 355. Furthermore, the required "strong inference" of scienter "must be 'more than merely plausible or reasonable–it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent,'" and a court must consider any "competing inferences rationally drawn from all the facts alleged, taken collectively." *ECA*, 553 F.3d at 198 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007)).

### A.     Plaintiffs Do Not Allege Motive or Opportunity.

The AC does not even attempt to allege that any Defendant had a motive to defraud investors, *i.e.*, that any Defendant could have realized "concrete benefits . . . by one or more of the false statements and wrongful nondisclosures alleged." *Kalnit v. Eichler*, 264 F.3d at 139.

### B.     Plaintiffs Fail to Adequately Plead Conscious Misbehavior or Recklessness.

Absent motive allegations, "the strength of the circumstantial allegations must be correspondingly greater." *Seadrill*, 2016 WL 3461311, at *12 (quoting *Kalnit*, 264 F.3d at 142).

---

qualitative and quantitative factors, which primarily applies to cases (unlike this one) involving financial statements, *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 390 (2d Cir. 2015); *see also* SAB 99, 64 Fed. Reg. 45, 150 (Aug. 19, 1999) (listed in 17 C.F.R. pt. 211, subpt. B), the same analysis applies. Moreover, analysts' critique of Unilever's communications, style or business decisions (*see* AC ¶¶ 103-104) says nothing about securities fraud. *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477 (1977).

"The standard for pleading scienter in this manner is stringent and subject to the heightened pleading standard of the PSLRA." *Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382, 413 (S.D.N.Y. 2020) (citing 15 U.S.C. § 78u-4(b)(2)(A)). Recklessness is not merely a heightened form of negligence, but instead "refers to conduct that 'at the least . . . is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Seadrill*, 2016 WL 3461311, at *12 (citation omitted). Finally, to allege scienter based on Defendants' knowledge, Plaintiffs "must 'specifically allege[] defendant's knowledge of facts or access to information contradicting their public statements.'" *Canez v. Intelligent Sys. Corp.*, No. 19-CV-3949 (RPK) (CLP), 2021 WL 3667012, at *10 (E.D.N.Y. Aug. 18, 2021) (alteration in original) (citation omitted).

Plaintiffs do not come close to alleging conscious misbehavior or recklessness. First, Plaintiffs' vague allegation that the 2019 Form 20-F stated that "information that may be required to be disclosed is reported to Unilever's senior management including, where appropriate, the Chief Executive Officer and the Chief Financial Officer" (AC ¶ 108) is insufficient. *See Shetty*, 796 F. App'x at 35. Second, with respect to Defendants Pitkethly and Sotamaa, other than their positions at the Company (*e.g.*, AC ¶¶ 18-19, 21-23), which is insufficient to establish scienter, *see Marcu v. Cheetah Mobile Inc.*, No. 18-CV-11184 (JMF), 2020 WL 4016645, at *7 (S.D.N.Y. July 16, 2020), or Sotamaa's signing of the SEC filings (*e.g.*, *id.* ¶¶ 52, 57, 60, 63), Plaintiffs make no specific scienter allegations at all. "In a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible." *Venkataraman v. Kandi Techs. Grp., Inc.*, No. 20 Civ. 8082 (LGS), 2021 WL 4952260, at *3 (S.D.N.Y. Oct. 25, 2021) (Schofield, J.) (citation omitted).

Finally, even if certain Individual Defendants were aware of the Resolution at the time of any of the challenged statements (*see* AC ¶¶ 106-08), this does not suggest that Defendants knew that Unilever's unrelated risk disclosures were false. And even if the Resolution were relevant to the risk disclosures (which it is not), "an inference of scienter does not follow from the mere fact of non-disclosure of relevant information." *In re Neurotrope, Inc.*, 315 F. Supp. 3d at 735. Nor are there any factual allegations suggesting that any of the Individual Defendants (or anyone whose scienter could be imputed to Unilever) believed there was a duty to disclose the Resolution before they did so. *See Kalnit*, 264 F.3d at 144 ("Because, as discussed earlier, this case does not present facts indicating a clear duty to disclose, plaintiff's scienter allegations do not provide *strong* evidence of conscious misbehavior or recklessness."); *Seadrill*, 2016 WL 3461311, at *13 (similar).[12] In fact, as already noted, litigation ensued over the relative authority of the B&J Limited Board, further undermining any inference of scienter.

## C.   Plaintiffs' Proffered Inferences Are Not Cogent and Are Less Compelling Than the Opposing Nonfraudulent Inferences.

Lastly, an inference of nonfraudulent intent is far more cogent and compelling than any inference of scienter. As Plaintiffs implicitly concede in declining to even try to allege motive to defraud, there was no conceivable reason to fraudulently delay announcing the Resolution. To the contrary, Plaintiffs' own allegations demonstrate that, after the Resolution was purportedly passed in July 2020, Defendants were actively engaged in internal negotiation, discussion and debate about "whether and how" to implement the Resolution. (AC ¶¶ 4, 41, 56, 68, 75, 81, 107.) Rather than suggesting any nefarious effort to "conceal" or "mischaracteriz[e]" the truth (*id.* ¶¶ 48, 109),

---

[12] S*ee also In re Plug Power, Inc. Sec. Litig.*, No. 21 CIV. 2004 (ER), 2022 WL 4631892, at *17 (S.D.N.Y. Sept. 29, 2022) ("[C]ourts generally do not infer scienter based on failure to disclose information where there is no duty to disclose under the securities laws."); *Intercept Pharms., Inc.*, 2022 WL 837114, at *22 ("Failure to disclose facts that Defendants had no duty to disclose cannot support a strong inference of scienter.").

these allegations suggest that, while this internal discussion and debate was ongoing, it was premature to disclose the Resolution to the market and any characterization of it was the subject of active debate.[13] *See Seadrill*, 2016 WL 3461311, at *13 ("[T]he more compelling inference is that Defendants were reacting to an uncertain and rapidly changing environment and attempting to understand the implications of each successive set of sanctions."). Indeed, Plaintiffs do not and cannot allege that Unilever did not sincerely believe that it "remained fully committed to [its] presence in Israel . . . ." (AC ¶ 43.) Indeed, at the end of the day, through the sale of assets to Zinger, that's exactly what happened. (*See id.* ¶ 97.) Moreover, Plaintiffs' inference is not as compelling as the nonfraudulent inference that Defendants genuinely believed that if any action was taken pursuant to the Resolution, it would be immaterial in light of Unilever's global business. Plaintiffs do not and cannot allege that Ben & Jerry's sales in Israel and the West Bank make up more than a miniscule fraction of Unilever's overall sales. Indeed, Plaintiffs' theory of scienter is illogical. To the extent Plaintiffs believe the Resolution was final and ultimately was going to be disclosed, they do not even hint at what Defendants stood to gain from concealing it, as opposed to announcing it on the day it was passed. *See ECA*, 553 F.3d at 203 ("Plaintiffs' view of the facts defies economic reason, and therefore does not yield a reasonable inference of fraudulent intent." (citation omitted)); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994) ("It is hard to see what benefits accrue from a short respite from an inevitable day of reckoning.").

## III.   PLAINTIFFS' RULE 10b-5(a) AND (c) CLAIMS SHOULD BE DISMISSED

Plaintiffs do not plead any separate "scheme" liability under Rule 10b-5(a) and (c), 17 C.F.R. § 240.10b-5(a), (c). (AC ¶ 131.) Plaintiffs' claim that Defendants made misrepresentations

---

[13] Plaintiffs' claim is also defeated by the fact that the varying positions of Ben & Jerry's, Unilever and the B&J Limited Board were all disclosed on July 19, 2021. (*See* AC ¶¶ 42-45.)

or omissions, even if adequately pleaded, does not suffice to plead scheme liability. *See Rio Tinto plc*, 2022 WL 2760323, at \*1 (citing *Lentell*, 396 F.3d 161). Plaintiffs do not "articulate with precision the contours of an alleged scheme to defraud investors" or any "specific acts . . . conducted in furtherance of it" and "[m]erely incorporating the previous pages of the Complaint "paired with . . . conclusory assertion[s]," as Plaintiffs have done, is not enough. *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021).

## IV.     PLAINTIFFS FAIL TO STATE A SECTION 20(A) CLAIM

Finally, Plaintiffs' control person claims under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), fail. "To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *Seadrill*, 2016 WL 3461311, at \*13 (citation omitted). As discussed above, Plaintiffs fail to plead any primary liability under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), which is fatal. *See In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 13 CIV. 8846 (LGS), 2014 WL 7176187, at \*8 (S.D.N.Y. Dec. 16, 2014) (Schofield, J.). Moreover, Plaintiffs fail to allege how the Individual Defendants were culpable participants in any alleged violation – because Plaintiffs cannot plead scienter with respect to the Individual Defendants, *see supra* Section II, they also cannot plead culpable participation. *See In re ShengdaTech, Inc. Sec. Litig.*, No. 11 Civ. 1918 (LGS), 2014 WL 3928606, at \*10 (S.D.N.Y. Aug. 12, 2014) (Schofield, J.).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the AC in its entirety with prejudice.[14]

---

[14] Dismissal should be with prejudice as "the flaws in pleading are incurable on the facts of this case" and amendment would be futile. *Fort Worth Emps.' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 233 (S.D.N.Y. 2009).

Dated: New York, New York
        December 15, 2022

                                    Respectfully submitted,

                                    */s/ Susan L. Saltzstein*
                                    Jay B. Kasner
                                    Susan L. Saltzstein
                                    Scott D. Musoff
                                    Mackenzie G. Newman
                                    SKADDEN, ARPS, SLATE,
                                       MEAGHER & FLOM LLP
                                    One Manhattan West
                                    New York, NY 10001
                                    Phone: (212) 735-3000
                                    Fax:     (212) 735-2000
                                    jay.kasner@skadden.com
                                    susan.saltzstein@skadden.com
                                    scott.musoff@skadden.com
                                    mackenzie.newman@skadden.com

                                    *Attorneys for Defendants*