UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| CITY OF ST. CLAIR SHORES POLICE AND FIRE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | : : : : |
| Plaintiff, | : : : |
| v. | : : |
| UNILEVER PLC, ALAN JOPE, RITVA SOTAMAA, and GRAEME PITKETHLY, | : : : : |
| Defendants. | : : |

22-cv-05011 (LGS)

ECF Case
Electronically Filed

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

Jay B. Kasner
Susan L. Saltzstein
Scott D. Musoff
Mackenzie G. Newman
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Phone: (212) 735-3000
Fax: (212) 735-2000

*Attorneys for Defendants*

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.     PLAINTIFFS DO NOT PLEAD AN ACTIONABLE FALSE OR MISLEADING MISSTATEMENT OR OMISSION. ............................................................... 2

     A.    Unilever's Risk Disclosures Were Not Misleading. ................................. 2

     B.    Regulation S-K Did Not Mandate Disclosure of the Resolution or Debate. ........... 7

     C.    Any Purported Omission Was Immaterial. ............................................... 9

II.    PLAINTIFFS FAIL TO PLEAD SCIENTER ................................................ 12

III.   THE COURT MAY CONSIDER DEFENDANTS' EXHIBITS ON THIS MOTION .................................................................................................... 14

CONCLUSION .......................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re Agria Corp. Securities Litigation*,
    672 F. Supp. 2d 520 (S.D.N.Y. 2009)................................................................................5

*In re Allergan PLC Securities Litigation*,
    No. 18 Civ. 12089 (CM) (GWG), 2022 WL 17584155 (S.D.N.Y. Dec. 12, 2022)..........10

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)............................................................................................................9

*In re BHP Billiton Ltd. Securities Litigation*,
    276 F. Supp. 3d 65 (S.D.N.Y. 2017).............................................................................2, 8

*In re Chicago Bridge & Iron Co. N.V. Securities Litigation*,
    No. 17 Civ. 1580 (LGS), 2018 WL 2382600 (S.D.N.Y. May 24, 2018)..........................13

*In re Citigroup, Inc. Securities Litigation*,
    330 F. Supp. 2d 367 (S.D.N.Y. 2004),
    *aff sub nom. Albert Fadem Tr., v. Citigroup, Inc.*, 165 F.App'x 928 (2d Cir. 2006) ........11

*City of Omaha Police & Fire Retirement System v. Evoqua Water Technologies Corp.*,
    450 F. Supp. 3d 379 (S.D.N.Y. 2020)................................................................................3

*City of Pontiac General Employees' Retirement System v. Lockheed Martin Corp.*,
    875 F. Supp. 2d 359 (S.D.N.Y. 2012)..............................................................................11

*City of Providence v. Aeropostale, Inc.*,
    No. 11 Civ. 7132 (CM) (THK), 2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013)................3

*City of Riviera Beach General Employees Retirement System v. Macquarie Infrastructure Corp.*,
    No. 18-CV-3608 (VSB), 2021 WL 4084572 (S.D.N.Y. Sept. 7, 2021) ...........................14

*Cooperman v. Individual, Inc.*,
    171 F.3d 43 (1st Cir. 1999)................................................................................................9

*Cortina v. Anavex Life Sciences Corp.*,
    No. 15-CV-10162 (JMF), 2016 WL 7480415 (S.D.N.Y. Dec. 29, 2016) ..........................2

*In re Coty Inc. Securities Litigation*,
    No. 14-cv-919 (RJS), 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016).................................3

*DHL Global Forwarding Management Latin America, Inc. v. Pfizer, Inc.*,
No. 13–cv–8218 (KBF), 2014 WL 5169033 (S.D.N.Y. Oct. 14, 2014) ............................15

*Diehl v. Omega Protein Corp.*,
339 F. Supp. 3d 153, (S.D.N.Y. 2018) ...................................................................2, 5

*In re DraftKings Inc. Securities Litigation*,
No. 21 Civ. 5739 (PAE), 2023 WL 145591, at *38 (S.D.N.Y. Jan. 10, 2023) ..............8, 14

*In re EDAP TMS S.A. Securities Litigation*,
No. 14 Civ. 6069 (LGS), 2015 WL 5326166 (S.D.N.Y. Sept. 14, 2015) ........................14

*In re Express Scripts Holdings Co. Securities Litigation*,
773 F. App'x 9 (2d Cir. 2019) ...........................................................................13

*In re FBR Inc. Securities Litigation*,
544 F. Supp. 2d 346 (S.D.N.Y. 2008) ....................................................................5

*Fresno County Employees' Retirement Ass'n v. comScore, Inc.*,
268 F. Supp. 3d 526 (S.D.N.Y. 2017) ...............................................................10, 11

*Gerloff v. Hostetter Schneider Realty*,
No. 12 Civ. 9404 (LGS), 2014 WL 1099814 (S.D.N.Y. Mar. 20, 2014) ...........................8

*Glaser v. The9, Ltd.*,
772 F. Supp. 2d 573 (S.D.N.Y. 2011) ...................................................................13

*Glazer v. Formica Corp.*,
964 F.2d 149 (2d Cir. 1992) ..............................................................................4

*Global Network Communications, Inc. v. City of New York*,
458 F.3d 150 (2d Cir. 2006) .............................................................................15

*Goplen v. 51job, Inc.*,
453 F. Supp. 2d 759 (S.D.N.Y. 2006) ...................................................................13

*Hutchison v. Deutsche Bank Securities Inc.*,
647 F.3d 479 (2d Cir. 2011) .............................................................................10

*IMG Memorial Fund 1, LLC v. First Landing Fund, LLC*,
No. 21 Civ. 3263 (LGS), 2022 WL 826276 (S.D.N.Y. Mar. 18, 2022) ...........................13

*Indiana Public Retirement System v. SAIC, Inc.*,
818 F.3d 85 (2d Cir. 2016) ...........................................................................8, 11

iv

*International Audiotext Network, Inc. v. AT&T*,
    62 F.3d 69 (2d Cir. 1995) ....................................................................................................15

*Lachman v. Revlon, Inc.*,
    487 F. Supp. 3d 111, 138 (E.D.N.Y. 2020) .........................................................................12

*In re Liberty Tax, Inc. Securities Litigation*,
    435 F. Supp. 3d 457 (E.D.N.Y. 2020),
    *aff'd*, 828 F. App'x 747 (2d Cir. 2020) ................................................................................7

*Litwin v. Blackstone Group, L.P.*,
    634 F.3d 706 (2d Cir. 2011) ...............................................................................................10

*Local #817 IBT Pension Fund v. XPO Logistics, Inc.*,
    No. 21-986, 2022 WL 2358414 (2d Cir. June 30, 2022) .....................................................14

*Lopez v. CTPartners Executive Search Inc.*,
    173 F. Supp. 3d 12 (S.D.N.Y. 2016) ....................................................................................8

*Marcu v. Cheetah Mobile Inc.*,
    No. 18-CV-11184 (JMF), 2020 WL 4016645 (S.D.N.Y. July 16, 2020) ....................1, 3, 5

*Meyer v. Jinkosolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014) .................................................................................................2

*Moab Partners, L.P. v. Macquarie Infrastructure Corp.*,
    No. 2022 WL 17815767 (2d Cir. Dec. 20, 2022) .........................................................13, 14

*Oklahoma Enforcement Retirement System v. Papa John's International, Inc.*,
    517 F. Supp. 3d 196 (S.D.N.Y. 2021) ..............................................................................2, 7

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund,*
    *Mgmt. LLC*, 595 F.3d 86 (2d Cir. 2010) ............................................................................11

*Pierce v. Fordham University, Inc.*,
    No. 15-CV-4589 (JMF), 2016 WL 3093994 n.1 (S.D.N.Y. June 1, 2016),
    *aff'd*, 692 F. App'x 644 (2d Cir. 2017) ................................................................................6

*In re Ply Gem Holdings, Inc.*,
    No. 14-CV-3577 (JPO), 2016 WL 5339541 (S.D.N.Y. Sept. 23, 2016) ............................11

*Reiner v. Teladoc Health, Inc.*,
    No. 18-CV-11603 (GHW) (BCM), 2020 WL 6343217 (S.D.N.Y. Sept. 4, 2020).............2

*Reiss v. Pan American World Airways, Inc.*,
    711 F.2d 11 (2d Cir. 1983) ...................................................................................................9

*In re Seadrill Ltd. Securities Litigation*,
    No. 14 Civ. 9642 (LGS), 2016 WL 3461311 (S.D.N.Y. June 20, 2016)....................12, 15

*Shetty v. Trivago N.V.*,
    796 F. App'x 31 (2d Cir. 2019) ...............................................................................12

*Stratte-McClure v. Morgan Stanley*,
    776 F.3d 94 (2d Cir. 2015)........................................................................................14

*St. Clair-Hibbard v. American Finance Trust, Inc.*,
    No. 18 Civ. 1148 (LGS) (KNF), 2019 WL 4601720 (S.D.N.Y. Sept. 23, 2019),
    *aff'd*, 812 F. App'x 36 (2d Cir. 2020)......................................................................14

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016)......................................................................................14

*Turner v. MagicJack VocalTec, Ltd.*,
    No. 13 Civ. 0448, 2014 WL 406917 (S.D.N.Y. Feb. 3, 2014) ...........................................4

*In re Van der Moolen Holding N.V. Securities Litigation*,
    405 F. Supp. 2d 388 (S.D.N.Y. 2005)........................................................................5

*Venkataraman v. Kandi Technologies Group, Inc.*,
    No. 20 Civ. 8082 (LGS), 2021 WL 4952260 (S.D.N.Y. Oct. 25, 2021) ...........................13

*Wandel v. Gao*,
    590 F. Supp. 3d 630 (S.D.N.Y. 2022).........................................................................3, 15

*Willard v. UP Fintech Holding Ltd.*,
    527 F. Supp. 3d 609 (S.D.N.Y. 2021)..........................................................................2

**STATUTES**

40 Ill. Comp. Stat. 5/1-110.16 (2022) ................................................................................4

Ariz. Rev. Stat. Ann. § 35-393.01........................................................................................4

Colo. Rev. Stat. Ann. § 24-54.8-202 (2016) .......................................................................4

Fla. Stat. § 215.4725 (2018)................................................................................................4

New York, N.Y. Exec. Order No. 157 (Sept. 2, 2016) ........................................................4

N.J. Stat. Ann. § 52:18A-89.14 (2016) ...............................................................................4

Tex. Gov't Code §§ 808.001, 808.102................................................................................4

## REGULATIONS

17 C.F.R. § 229.105 ................................................................................................8

17 C.F.R. § 229.303(b)(2)(i) ....................................................................................7

Modernization of Regulation S-K Items,
    85 Fed. Reg. 63,726 (Oct. 8, 2020)...................................................................8

Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150 (1999) ....................................10

## OTHER AUTHORITIES

Management's Discussion & Analysis of Financial Condition & Results of Operations,
    Securities Act Release No. 6835, 43 SEC Docket 1330 (May 18, 1989)...........................7

## PRELIMINARY STATEMENT

In their Opposition (or "Opp.") to Defendants' Motion to Dismiss the Amended Complaint, Plaintiffs continue in their futile search for a non-disclosure claim lurking within Unilever's customer, ethical and legal risk disclosures.[1] But "'cautionary statements of potential risk have *only rarely* been found to be actionable by themselves' . . . [and t]hose that have been found actionable typically 'warn of a risk that has already occurred.'" *Marcu v. Cheetah Mobile Inc.*, 2020 WL 4016645, at *6 (S.D.N.Y. July 16, 2020) (emphasis added) (citations omitted). Here, Plaintiffs fail to allege facts demonstrating that the customer, ethical or legal risks identified in Unilever's risk disclosures, which covered Unilever's global business, with 400 brands in 190 countries, *ever* materialized, much less that they had materialized when the disclosures were made. And even if the Resolution had been disclosed at the premature time Plaintiffs urge, there is no inconsistency between the Resolution and the risk disclosures. Nor can Plaintiffs avoid their own allegations that the Resolution had not been implemented (and was ultimately mooted), or the well-established law demonstrating that a duty to disclose such inchoate policies does not exist. A different rule – requiring that every internal debate be publicly announced – would expand dramatically the disclosure obligations of public companies while adding nothing of value to the mix of relevant information available to the public. And regardless, Plaintiffs do not and cannot allege that the Resolution, even if it were implemented, would have a material financial impact on Unilever's business as a whole, to which the challenged risk disclosures related. Finally, even if Plaintiffs could overcome these hurdles, the Opposition confirms that the scienter allegations are based on, *inter alia*, the sort of vague, speculative and position-based arguments that courts

---

[1] Capitalized terms have the same meaning as in the Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint ("Opening Brief" or "Br.").

routinely reject. The AC should be dismissed.[2]

## ARGUMENT

## I. PLAINTIFFS DO NOT PLEAD AN ACTIONABLE FALSE OR MISLEADING MISSTATEMENT OR OMISSION.

### A. Unilever's Risk Disclosures Were Not Misleading.

Plaintiffs do not respond to – and thereby concede – Defendants' argument that the risk disclosures – which concern potential risks to Unilever's overall global business – are too attenuated from the Resolution to impose any duty to disclose.[3] (Br. at 11-13.)[4] Thus, Plaintiffs' claims fail. Plaintiffs instead argue that the risk disclosures were misleading because, in light of the Resolution and the "ensuing dispute" over its implementation, the disclosed risks had already materialized or were likely to materialize. (Opp. at 11-15.) But even assuming (incorrectly) "[a]n increase in a risk[,]" that "does not mean the risk has already come to pass, such that a disclosure that simply identifies the risk would be misleading." *Okla. L. Enf't Ret. Sys. v. Papa John's Int'l, Inc.*, 517 F. Supp. 3d 196, 211 (S.D.N.Y. 2021) (first alteration in original) (citation omitted).

Regardless, Plaintiffs have not alleged facts showing that at the time of the challenged statements, the disclosed risks had transpired or even that there was a materially increased likelihood that they would transpire. In other words, there are no well-pled factual allegations

---

[2] Plaintiffs' Rule 10b-5(a) and (c) claims were not addressed in Opposition and should be dismissed as abandoned. *See Willard v. UP Fintech Holding Ltd.*, 527 F. Supp. 3d 609, 618 n.4 (S.D.N.Y. 2021).

[3] Plaintiffs' citation to cases where courts found a duty to disclose because the company put a topic at issue are inapposite as all involve related statements and omissions, *see, e.g.*, *In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65, 80 (S.D.N.Y. 2017) (safety) (Opp. at 13); *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 251 (2d Cir. 2014) (specific pollution measures) (Opp. at 10-11), unlike the statements and purported omissions at issue here (Br. at 11-13). As noted in *Diehl v. Omega Protein Corp.*, 339 F. Supp. 3d 153 (S.D.N.Y. 2018), "it is the specificity of the disclosures in *Jinkosolar* that makes them actionable, specificity that is not present here." *Id.* at 163.

[4] *See also Reiner v. Teladoc Health, Inc.*, 2020 WL 6343217, at *12 (S.D.N.Y. Sept. 4, 2020) (risk disclosure not misleading for failure to disclose conduct of executive that was not sufficiently tied to the disclosure), *adopted in part and modified in part on other grounds*, *Reiner v. Teladoc Health, Inc.*, 2020 WL 7028638, at *1 (S.D.N.Y. Nov. 30, 2020); *Cortina v. Anavex Life Sciences Corp.*, 2016 WL 7480415, at *5-6 (S.D.N.Y. Dec. 29, 2016) (risk disclosure regarding volatility of stock investments not rendered misleading for failure to disclose paid-promotional scheme).

demonstrating that, at the time of the statements (i) Unilever had failed to "maintain strong relationships with customers" in a way that "negatively impact[ed] [its] terms of business" with those customers; (ii) Unilever had failed "to meet . . . high [ethical] standards" in a way that damaged "Unilever's corporate reputation and business results"[;] or (iii) Unilever had failed to "comply with laws and regulations" in a way that "expose[d] Unilever to civil and/or criminal actions leading to damages, fines and criminal sanctions." (*E.g.*, AC ¶¶ 53-55.)[5] *Marcu*, 2020 WL 4016645, at *6 (no duty to disclose where risk remained hypothetical). The supposed chance of political fallout from the Resolution was not even addressed by these risk factors.

Plaintiffs' arguments to the contrary lack merit. Regarding the customer risk disclosure, Plaintiffs highlight "the B&J Board's decision to terminate 'customer relationships' . . . in 'Occupied Palestinian Territory,'" as well as "the risk of a customer backlash . . . among consumers who disagreed with the B&J Board's decision." (Opp. at 12.) But Plaintiffs have not alleged adequately that Unilever's business ever was impacted materially by customer relationships or backlash, much less when the challenged disclosures were made and Defendants were still determining whether and how to operationalize the Resolution (which ultimately was mooted).[6] *See In re Coty Inc. Sec. Litig.*, 2016 WL 1271065, at *5-6 (S.D.N.Y. Mar. 29, 2016) (risk disclosures were not misleading where plaintiffs failed to allege facts to establish sales were already declining at the time of the statements). Nor have they alleged facts supporting a materially increased risk of such outcomes.

---

[5] This fact distinguishes Plaintiffs' cases involving challenges to risks disclosures where the risks had already materialized when the disclosures were made. (Opp. at 10-15); *see, e.g.*, *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 408-09 (S.D.N.Y. 2020); *City of Providence v. Aeropostale, Inc.*, 2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013). And *Wandel v. Gao*, 590 F. Supp. 3d 630 (S.D.N.Y. 2022), supports Defendants; there was no duty to disclose a risk that had not transpired. *See id.* at 643-44.

[6] Moreover, Plaintiffs have no response to the argument that the unique structure of the Limited Board and Ben & Jerry's history of taking stances on controversial topics were well-known and there can be no omission where the allegedly omitted facts were disclosed. (Br. at 16.)

Regarding the ethical risk disclosure, Plaintiffs assert that a reasonable investor would read this disclosure to mean that "'Unilever and its brands' had not taken any actions '[in]consistent with the expectations of customers, consumers and other stakeholders' that would jeopardize 'the reputation of Unilever and its brands.'" (Opp. at 13.) But this argument distorts the language of the disclosure, which is premised on the importance of Unilever "[a]cting in an ethical manner." (AC ¶ 54.) Plaintiffs have not alleged facts suggesting Unilever ever acted unethically in connection with the Resolution, much less facts showing a resulting material impact on "Unilever's corporate reputation and business results." (*Id.*) Nor have Plaintiffs alleged facts showing that the Resolution materially "changed Unilever's . . . risk profile" in this regard. (*See* Opp. at 15.)[7] Plaintiffs' offer of mere speculation does not suffice. *See Turner v. MagicJack VocalTec, Ltd.*, 2014 WL 406917, at *6 (S.D.N.Y. Feb. 3, 2014) (litigation liabilities were not misrepresented when no facts were pled to suggest a lawsuit incurred potential liability).

As to the legal risk disclosure, Plaintiffs assert that the Resolution "violated U.S. Anti-BDS Legislation." (Opp. at 14.) But this argument misconstrues the Anti-BDS laws cited in the AC. (AC ¶ 47.) Those laws generally prohibit public entities from investing in companies that boycott Israel; they do not prohibit companies from boycotting Israel.[8] Even if the Resolution had been implemented when the legal risk disclosure was made (and it had not), the Resolution itself would not have violated Anti-BDS laws. And regardless, when this disclosure was made there had been no findings that Ben & Jerry's, much less Unilever, had violated Anti-BDS laws or even that the

---

[7] Plaintiffs' citation to *Glazer v. Formica Corp.*, 964 F.2d 149 (2d Cir. 1992), supports Defendants; there the court found the company had no duty to disclose negotiations leading to a leveraged buyout. *Id.* at 156-57 (Opp. at 15).

[8] *See, e.g.*, New York, N.Y. Exec. Order No. 157 (Sept. 2, 2016); New Jersey, N.J. Stat. Ann. § 52:18A-89.14 (2016); Florida, Fla. Stat. § 215.4725 (2018); Texas, Tex. Gov't Code §§ 808.001, 808.102 (2017); Illinois, 40 Ill. Comp. Stat. 5/1-110.16 (2022); Colorado, Colo. Rev. Stat. Ann. § 24-54.8-202 (2016); Arizona, Ariz. Rev. Stat. Ann. § 35-393.01 (2019).

public entities had violated Anti-BDS laws. Companies are not required to "disclose uncharged []
unadjudicated wrongdoing." *Diehl*, 339 F. Supp. 3d at 164-65.[9] Plaintiffs also ignore the
challenged risk disclosure's language, which warned of the risk of "*civil and/or criminal actions
leading to damages, fines and criminal sanctions*" (AC ¶ 55 (emphasis added)), and have not
alleged facts showing that risk ever transpired, or that there was a materially increased likelihood
it would.[10] *See In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 362 (S.D.N.Y. 2008) (disclosed
risk had not transpired where disclosure focused on the *risk of financial loss* from regulatory
violations, but it was not clear that regulatory violations would cause financial loss).

Regardless, even if Plaintiffs had alleged such facts, their claims still fail. Plaintiffs'
attempt to retreat from the AC is telling: Plaintiffs unequivocally alleged that Unilever was still
determining whether and how to implement the Resolution when the challenged statements were
made. (*See* Br. at 13-16; *see also* AC ¶¶ 4, 41, 56, 68, 75, 81, 87, 107, 119); *In re Agria Corp. Sec.
Litig.*, 672 F. Supp. 2d 520, 529 (S.D.N.Y. 2009) ("[T]here is no general duty to disclose internal
problems merely because those problems might become significant."). Although Plaintiffs claim

---

[9] The decision in *In re Van der Moolen Holding N.V. Securities Litigation* is inapposite. 405 F. Supp. 2d 388 (S.D.N.Y.
2005) (Opp. at 14). There, defendants made statements during the class period regarding revenue generated by the
parent company's primary subsidiary and the court held the parent company also had a duty to disclose that the source
of its revenue came from the subsidiary violating NYSE rules. *Id.* at 401-07. Here, by contrast, there are no challenged
statements regarding sources of Unilever's or Ben & Jerry's revenue, and the risk disclosures are attenuated from, and
do not put at issue, any of the purported omissions. (Br. at 11-13.) Moreover, courts in this district have declined to
follow *In re Van der Moolen*, "as doing so would be inconsistent with the well-established proposition that there is no
'general duty to disclose corporate mismanagement or uncharged' misconduct . . . and would transform the securities-
fraud laws into insurance against any wrongdoing." *Marcu*, 2020 WL 4016645, at *4 n.1 (citation omitted).

[10] Plaintiffs' conclusory suggestion that mere passage of the Resolution, even if it was never announced, would violate
Anti-BDS Legislation (Opp. at 14 n.15) is confounding, in particular considering that the AQP License Agreement
was in place through December of 2022, such that no "boycott" could go into effect (and ultimately none went into
effect). (Br. at 6.) And again, even were one to assume that the Resolution was somehow tantamount to a "boycott"
and to further assume that such "boycott" was ultimately effectuated (which it was not), Plaintiffs do not and cannot
dispute that companies need not accuse themselves of uncharged, unadjudicated wrongdoing. Relatedly, although
Plaintiffs appear to have abandoned any claims that Unilever violated Israeli law by failing to address this issue in the
Opposition, Defendants note that the AC itself forecloses any such claims. (AC ¶ 36 (alleging that it was AQP and
Zinger who could be found in violation of Israeli law if AQP ceased distribution in the West Bank).)

this argument is improper (Opp. at 12 n.9), *it is based on their own repeated allegations* of a year-long dispute over "whether and how" to implement the Resolution. (*E.g.*, AC ¶¶ 4, 41, 56, 68, 75, 81, 87, 107, 119.) And in the Opposition, Plaintiffs repeatedly rely on the same allegations (*see* Opp. at 1-2, 5, 9, 11, 15-18), which belie Plaintiffs' claim that Unilever was attempting to "thwart and delay implementation of the Resolution." (Opp. at 12 n.9); *see Pierce v. Fordham Univ., Inc.*, 2016 WL 3093994, at *2 n.1 (S.D.N.Y. June 1, 2016) (finding courts need not accept internally inconsistent or contradictory allegations), *aff'd*, 692 F. App'x 644 (2d Cir. 2017).

Plaintiffs also assert that the Resolution was a "final corporate decision" of the B&J Limited Board. (Opp. at 12 n.9.) But there are no factual allegations to suggest that at the time of the challenged disclosures, Unilever believed the B&J Limited Board could implement unilaterally and immediately the Resolution by ceasing ice cream sales in the West Bank – an outcome Plaintiffs concede was subject to debate, and which ultimately did not occur. (AC ¶¶ 41, 97.) In fact, the AC alleges the opposite: the AQP License Agreement was in place through December of 2022 (AC ¶ 34), such that the Resolution could not have immediate effect. And Unilever IP Holdings B.V. (not Ben & Jerry's) owned the trademarks, further demonstrating the impossibility of the B&J Limited Board acting alone to implement the Resolution. (*See* Ex. 10 ¶ 8.[11])

Finally, Plaintiffs claim that Unilever "recognized the right of [the B&J Limited Board] to take decisions about its social mission." (Opp. at 12 n.9.) But this assertion ignores (1) the resulting litigation between Ben & Jerry's and Unilever over the relative authority of the B&J Limited Board (AC ¶¶ 98-101; *see also* Br. at 8) and (2) Unilever's later statement, plainly pled in the AC, that "[u]nder the terms of [its] acquisition agreement of Ben & Jerry's in 2000, Ben & Jerry's and its independent Board were granted rights to take decisions about its social mission, *but Unilever*

---

[11] Ex. 10 is the Declaration of Matt Close, which was incorporated by reference into the AC. (*See infra* Section III.)

*reserved primary responsibility for financial and operational decisions* and therefore has the right to" take action to ensure that B&J ice cream remains available in Israel and the West Bank. (AC ¶ 97 (emphasis added).) The inchoate nature of the Resolution and the internal discussions over its implementation are clear from the AC and the documents incorporated by reference therein.[12]

**B.    Regulation S-K Did Not Mandate Disclosure of the Resolution or Debate.**

Nor did Defendants have a duty to disclose the Resolution under Regulation S-K. (Br. at 17-19.) Plaintiffs assert that such a duty existed because Defendants knew about the Resolution and "the ensuing dispute," and Plaintiffs' speculative parade of horribles from implementing the Resolution "is easily inferred." (Opp. at 15-18.) But Plaintiffs have not alleged facts to show that Defendants were aware (i) the Resolution would be implemented or (ii) the possible negative consequences of implementing the Resolution would occur. Conversely, plaintiffs allege whether and how to implement the Resolution remained subject to debate, undermining a duty to disclose under Item 303. (*See, e.g.*, AC ¶¶ 4, 41, 56, 68, 75, 81, 87, 107, 119; Br. at 18; *supra* at 5-7).[13]

Moreover, Plaintiffs have not alleged facts showing actual knowledge of a trend, event or uncertainty that would have a *"material . . . unfavorable impact on [Unilever's] net sales or revenues or income from continuing operations." See* 17 C.F.R. § 229.303(b)(2)(i) (emphasis added); *see also In re Liberty Tax, Inc. Sec. Litig.*, 435 F. Supp. 3d 457, 469 (E.D.N.Y. 2020), *aff'd*, 828 F. App'x 747 (2d Cir. 2020) (explaining "the Second Circuit has only recognized a failure to comply with Item 303 when a company has failed to disclose a trend that was about to

---

[12] With no duty to disclose, any announcement's timing was within the Company's business judgment. (Br. at 16-17.)

[13] Moreover, Plaintiffs' description of the steps a company ought to take when evaluating whether or not disclosure under Item 303 is required assumes that management did not follow the rules. (Opp. at 16-17.) But there are no well-pled factual allegations to support that claim, and management's judgment is necessarily at play even in Plaintiffs' description. *See* Mgmts. Discussion & Analysis of Fin. Condition & Results of Operations, Securities Act Release No. 6835, 43 SEC Docket 1330, at *17 (May 18, 1989) ("In preparing MD&A disclosure, registrants should be guided by the general purpose of the MD&A requirements: to give investors an opportunity to look at the registrant *through the eyes of management* . . . . The MD&A requirements are intentionally flexible and general." (emphasis added)).

directly harm their operational results").[14] Plaintiffs assert that, "it is easily inferred that Unilever and its Ice Cream business group would have experienced a material adverse effect to their financial condition and results of operations." (Opp. at 17.) But this claim is based on Plaintiffs' own *ipse dixit*, not well-pled factual allegations. *In re DraftKings Inc. Sec. Litig.*, 2023 WL 145591, at *38 (S.D.N.Y. Jan. 10, 2023) (dismissing Item 303 claim where plaintiff did not adequately plead "a reasonably likely and significant effect on DraftKings's financial condition or operations"). Ben & Jerry's business in Israel and the West Bank is a small part of Unilever's business, and Plaintiffs do not and cannot plead otherwise. (*See infra* at 10; Br. at 11.)[15]

Finally, Plaintiffs now claim that Item 105 of Regulation S-K required disclosure of the Resolution and debate. (Opp. at 15, 17-18.) But this claim fails as: (1) "[i]t is 'axiomatic that the Complaint cannot be amended by the briefs in opposition . . . ,'" *Gerloff v. Hostetter Schneider Realty*, 2014 WL 1099814, at *7 (S.D.N.Y. Mar. 20, 2014) (Schofield, J.) (citation omitted); (2) Plaintiffs' unsupported assertion does not meet the applicable pleading standards (Br. at 9); (3) Plaintiffs' case demonstrates the high standard under Item 105, *see BHP Billiton Ltd.*, 276 F. Supp. 3d at 89 (Opp. at 13 n.12); and (4) although risk factors must be disclosed under Item 3(D) of Form 20-F, Item 105 is not incorporated into Form 20-F and does not apply here, Final Rule, Modernization of Regulation S-K Items 101, 103 and 105, 85 Fed. Reg. 63,726, 63,742-46, 63,761 (Oct. 8, 2020) (codified at 17 C.F.R. § 229.105) ("Regulation S-K does not apply to foreign private issuers unless a form reserved for foreign private issuers . . . specifically refers to [it]").

---

[14] *See also Papa John's*, 517 F. Supp. 3d at 212 ("Disclosures required by Item 303 will most often relate to issues in the realm of micro and macroeconomics; for example, a 'reduction in the registrant's product prices; erosion in the registrant's market share . . . .'" (citation omitted)); *Lopez v. CTPartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 34 (S.D.N.Y. 2016) (similar).

[15] Plaintiffs' cases (Opp. at 17-18) are inapposite because unlike here, plaintiffs pled a material impact on revenues. *See, e.g.*, *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 88, 96 (2d Cir. 2016).

**C.    Any Purported Omission Was Immaterial.**

Plaintiffs' arguments with respect to materiality similarly fail. Although Plaintiffs argue that the "intercorporate dispute" should not be analyzed as a contingent event (Opp. at 18), this argument cannot be squared with applicable law. *See Basic Inc. v. Levinson*, 485 U.S. 224, 232 (1988) ("Merger negotiations, because of the ever-present possibility that the contemplated transaction will not be effectuated, fall into the [contingent or speculative] category."). And even if the dispute were not contingent, Plaintiffs have not alleged facts showing the mere existence of an intercorporate dispute about whether and how to implement the Resolution would be material.[16]

Further, whether the Resolution ultimately would be implemented was clearly a contingent event. (Br. at 19.) Despite Plaintiffs' assertions that the Resolution "was ultimately operationalized" (Opp. at 19), the allegations in the AC demonstrate that there clearly was no alignment between Unilever and the B&J Limited Board, which ultimately resulted in litigation, and ignores the ultimate sale to assets of Zinger and AQP. (AC ¶ 96-101; *see also, e.g.*, Br. at 2, 8, 15 n.8, 23, 24.) Plaintiffs also again refer to Unilever's statement that it "recognized the right of [the B&J Limited Board] to take decisions about its social mission." (Opp. at 12 n.9, 19.) But this statement does not demonstrate a lack of dispute as to the B&J Limited Board's authority to implement the Resolution. Plaintiffs' allegations, Unilever's later statements and subsequent litigation between Unilever and the B&J Limited Board all demonstrate the continuing uncertainty over whether and how the Resolution might eventually be implemented. (*See supra* at 5-7.)

---

[16] *Cf. Reiss v. Pan Am. World Airways, Inc.*, 711 F.2d 11, 14 (2d Cir. 1983) ("[N]egotiations are inherently fluid and the eventual outcome is shrouded in uncertainty. . . . We are not confronted here with a failure to disclose hard facts which definitely affect a company's financial prospects."). The decision in *Cooperman v. Individual, Inc.*, 171 F.3d 43 (1st Cir. 1999) (cited in Opp. at 18) is distinguishable. There, the dispute at issue was between the founder and CEO of the company responsible for its growth and the rest of the board over the strategic direction of the company. *Id.* at 45. In any event, this case supports Defendants' argument; the court there held there was no duty to disclose a board-level dispute to make other statements not misleading. *Id.* at 47, 50-52.

Regardless, Plaintiffs have not alleged facts showing that any alleged negative consequences of implementing the Resolution would have a material impact on Unilever as a whole. (*See* Br. at 17-20.) Indeed, Plaintiffs essentially concede lack of any quantitative materiality in failing to respond to Defendants' arguments on this point. Plaintiffs instead focus solely on two "qualitative factors" under SEC Staff Accounting Bulletin No. 99 ("SAB 99"), 64 Fed. Reg. 45150 (1999).[17] Plaintiffs point to the factor addressing "whether the misstatement concerns a segment or other portion of the registrant's business that has been identified as playing a significant role in the registrant's operations or profitability." (Opp. at 20 n.20.) But Plaintiffs have not adequately alleged Ben & Jerry's played such a significant role in Unilever's profitability. *See Hutchison v. Deutsche Bank Sec. Inc.*, 647 F. 3d 479, 488 (2d Cir. 2011) (materiality of loans at issue should be evaluated against entire portfolio where plaintiffs did not allege particular segment was of distinct interest to investors). And even if Plaintiffs had pled adequately that Ben & Jerry's was such a significant segment, the purported omission concerns Ben & Jerry's business *in Israel and the West Bank*, and there are no allegations suggesting this business segment made up a material percent of Ben & Jerry's overall business, much less Unilever's. *In re Allergan PLC Sec. Litig.*, 2022 WL 17584155, at \*18 (S.D.N.Y. Dec. 12, 2022) (alleged misstatement was immaterial where the misstatement related to only 3% of the "crown jewel" segment).[18]

Plaintiffs also point to the factor regarding "whether the misstatement affects the registrant's compliance with regulatory requirements." (Opp. at 20 n.21.) However, Plaintiffs do

---

[17] As Defendants pointed out (Br. at 20 n.11), by its terms, SAB 99 applies to the materiality of "financial statements"; *see also id.* at n.2 ("As used in this SAB, 'misstatement' or 'omission' refers to a financial statement assertion that would not be in conformity with GAAP.").

[18] The allegations at issue here are unlike those at issue in *Litwin v. Blackstone Group, L.P.*, 634 F.3d 706, 720 (2d Cir. 2011) (cited in Opp. at 20, n.20), where one of the alleged misstatements related to an investment that accounted for 9.4% of Blackstone's "flagship" Corporate Private Equity segment.

not plead any failure to comply with regulatory requirements at the time of the purported misstatements or omissions (or ever). For example, although Plaintiffs rely on *Fresno County Employees' Retirement Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526 (S.D.N.Y. 2017) (Opp. at 19-20), the court there deemed this factor relevant because "misstated earnings and false promises of compliance with GAAP plausibly contributed to [the defendant's] inability to comply with its periodic reporting requirements and subsequent suspension from NASDAQ." *Id.* at 549. Here, by contrast, there are no allegations implicating similar regulatory requirements.[19]

Finally, searching for any suggestion that the Resolution or the dispute possibly could be material to Unilever's overall business, Plaintiffs resort to citing two vague alleged statements in analyst reports. (*See* Opp. at 20-21; AC ¶¶ 103-04.) But the first cited statement referencing a "woke agenda" is, at best, a "garden-variety mismanagement" complaint, which is not actionable under Section 10(b). (*See* Br. at 21, n.11); *see also In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 376 (S.D.N.Y. 2004), *aff sub nom. Albert Fadem Tr., v. Citigroup, Inc.*, 165 F.App'x 928 (2d Cir. 2006). As to the statement referencing a potential impact on Unilever's ability to acquire other companies, the analyst was evidently referring to the litigation between Unilever and the B&J Limited Board, not the Resolution and ensuing internal debate.[20] In any event, this statement is speculative and does not indicate that Unilever's stock price or financial results were materially impacted by the Resolution or the intercorporate dispute.[21]

---

[19] *SAIC*, 818 F.3d at 85, is also inapposite. (Opp. at 20 n.21). There, the misstatements were not immaterial due to "[t]he seriousness of the . . . fraud and the alleged importance of the . . . project to SAIC's future presence in the City and its ability to sell similar services to other municipalities around the United States . . . ." *Id.* at 96. *Operating Loc. 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt.t LLC*, 595 F.3d 86 (2d Cir. 2010) (Opp. at 20) is also inapposite as it deals with a "faithless fiduciary." *Id.* at 93. No similar allegations are at issue here.

[20] *See* Judith Evans, *Ben & Jerry's vs Unilever: how a star acquisition became a legal nightmare*, THE FINANCIAL TIMES (Oct. 11, 2022), https://www.ft.com/content/30efd993-8c23-4f1b-9385-132bbba3d863 (cited at AC ¶ 104).

[21] Plaintiffs' cited cases are once again inapposite. (Opp. at 20-21.) In both, unlike here, plaintiffs alleged facts that purported misstatements caused declines in profits, and the analyst reports at issue were one of multiple factors
*(cont'd)*

## II.    PLAINTIFFS FAIL TO PLEAD SCIENTER

The AC should also be dismissed for failure to allege a strong inference of scienter. (Br. at 21-24.)[22] Plaintiffs primarily argue that Defendants were aware of the Resolution and the dispute. (Opp. at 21-23.) However, the issue is not whether Defendants knew of the Resolution, but whether they were aware that Unilever's risk disclosures – which were unrelated to the Resolution – were false when made. (Br. at 23); *see also Lachman v. Revlon, Inc.*, 487 F. Supp. 3d 111, 138 (E.D.N.Y. 2020) (no scienter as to risk disclosures where plaintiffs did not plead defendants had knowledge of or access to information "contradicting [their] public statements." (citation omitted)).

Plaintiffs fail to allege such particularized facts. They point to a vague, after-the-fact, statement by Matt Close that, in debating "whether and how to implement" the Resolution, "Unilever's goal was to find an outcome that mitigated the risks to Unilever." (Opp. at 22.) But this statement provides no insight into the knowledge of the Individual Defendants and is entirely divorced from the challenged risk disclosures. (*See supra* at 3-5) And this generic reference to "risks" cannot be torqued even into an opinion relevant to this case. Nor are there well-pled factual allegations suggesting the Individual Defendants were aware of any potential for divestitures or litigation due to the announcement of the Resolution when the challenged disclosures were made.

Plaintiffs otherwise resort to the sort of speculative and position-based arguments that courts have rejected. For example, Plaintiffs' speculation that "[i]f there was any risk management situation that was 'appropriate' for disclosure to Unilever's CEO and CFO, this was it" (Opp. at 23) does not suffice. *See Shetty v. Trivago N.V.*, 796 F. App'x 31, 35 (2d Cir. 2019). Second,

---

supporting a finding of materiality. *See In re Ply Gem Holdings, Inc.*, 2016 WL 5339541, at *4 (S.D.N.Y. Sept. 23, 2016) (Opp. at 20-21); *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 368 (S.D.N.Y. 2012) (Opp. at 21).

[22] Plaintiffs concede that there is no alleged motive to defraud, such that "the strength of the circumstantial allegations [of conscious misbehavior or recklessness] must be correspondingly greater." *In re Seadrill Ltd. Sec. Litig.*, 2016 WL 3461311, at *12 (S.D.N.Y. June 20, 2016) (Schofield, J.) (citation omitted).

arguments that scienter can be pled based on the Individual Defendants' positions at the Company are insufficient to establish scienter. (*E.g.*, Opp. at 22 ("there can be no doubt . . . given their roles at Unilever" that the Individual Defendants were aware of unspecified "risks and uncertainties")); *see also Venkataraman v. Kandi Techs. Grp., Inc.*, 2021 WL 4952260, at *4 (S.D.N.Y. Oct. 25, 2021) (Schofield, J.) (rejecting as "boilerplate" and "lacking any specific factual content" allegation that defendants were aware of undisclosed adverse facts "[b]ecause of their positions within the [c]ompany" (first alteration in original) (citation omitted)). The same is true of allegations that scienter could be established by the fact that the Individual Defendants signed SEC filings (Opp. at 23). *See Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 774–75 (S.D.N.Y. 2006).[23]

Moreover, the decision on "whether and how" to implement the Resolution had not been made at the time of the challenged filings, further undermining any strong inference of scienter. (AC ¶¶ 4, 41, 56, 68, 75, 81, 87, 107, 119; *see also* Br. at 23-24; *supra* at 5-7) Plaintiffs' characterization of this internal debate as an "act of concealment" (Opp. at 24) should be rejected for the reasons already explained. (*See supra* at 5-7.) And while this debate was still ongoing, Plaintiffs cannot plead that Defendants knew how it would turn out, especially considering the twenty-year relationship between Unilever and the B&J Limited Board. (AC ¶¶ 28-31; Ex. 10 at ¶ 13); *see also In re Express Scripts Holdings Co. Sec. Litig.*, 773 F. App'x 9, 14-15 (2d Cir. 2019) (defendants could not have known negotiations would fail given prior successful negotiations).

Given the absence of any connection between the Resolution and the risk disclosures, no duty to disclose existed, precluding a showing of scienter. (Br. at 21-23); *see also Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 598 (S.D.N.Y. 2011) ("[T]he inconsistency suggested by the two

---

[23] Plaintiffs' cited cases are inapposite; in both, plaintiffs adequately pled the defendants had knowledge of information contradicting their affirmative statements. *See In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2018 WL 2382600, *9 (S.D.N.Y. May 24, 2018); *IMG Mem'l Fund 1, LLC v. First Landing Fund, LLC*, 2022 WL 826276, *3-5 (S.D.N.Y. Mar. 18, 2022). (Opp. at 23.)

statements is far too weak to buttress the 'strong circumstantial evidence' required for scienter."). Although Plaintiffs point to the Second Circuit's decision in *Moab Partners, L.P. v. Macquarie Infrastructure Corp.*, 2022 WL 17815767, at \*1–3 (2d Cir. Dec. 20, 2022) (Opp. at 24), plaintiffs there alleged facts that the defendants knew that an impending regulation would likely have a material impact on costs and revenues. *See id.* at \*2.[24] Plaintiffs here have alleged no such facts, and there was no duty to disclose under Regulation S-K. (*Supra* at 7-8); *see also Loc. #817 IBT Pension Fund v. XPO Logistics, Inc.*, 2022 WL 2358414, at \*4 (2d Cir. June 30, 2022) (no scienter where non-disclosure of trend or uncertainty was not "'*highly* unreasonable' or an '*extreme* departure from the standards of ordinary care.'" (citation omitted)).

Finally, Plaintiffs fail to rebut the conclusion that an inference of nonfraudulent intent is far more cogent and compelling than any inference of scienter. (Br. at 23-24.); *see also In re EDAP TMS S.A. Securities Litigation*, 2015 WL 5326166, at \*14 (S.D.N.Y. Sept. 14, 2015) (Schofield, J.) (more compelling inference that defendants knew of problems, but believed they would be remedied and company would gain FDA approval). Indeed, Plaintiffs do not explain what Defendants stood to gain from concealment. (Br. at 24.)

## III.    THE COURT MAY CONSIDER DEFENDANTS' EXHIBITS ON THIS MOTION

Contrary to Plaintiffs' argument (Opp. at 7-8), each of Defendants' exhibits is properly before the Court. The exhibits are "statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC and documents

---

[24] The Second Circuit's reversal does not change the legal proposition for which *City of Riviera Beach General Employees Retirement System v. Macquarie Infrastructure Corp.*, 2021 WL 4084572 (S.D.N.Y. Sept. 7, 2021) was cited. (Br. at 18.) Indeed, *Macquarie* cites *Stratte-McClure*, 776 F.3d 94 (2d Cir. 2015), as well as other authority cited in the Opening Brief. 2022 WL 17815767, at \*2-4. And there, the parent company attributed its financial decline, which, in turn, resulted in a 41% stock price decline, to the previously undisclosed regulation. *City of Riviera*, 2021 WL 4084572, at \*4. There is nothing analogous here; plaintiffs do not and cannot allege that Unilever's financial results were even impacted by the Resolution or the debate. *See DraftKings*, 2023 WL 145591, at \*38.

possessed by or known to the plaintiff upon which it relied in bringing the suit." *Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016); *see also St. Clair-Hibbard v. Am. Fin. Tr., Inc.*, 2019 WL 4601720, at *1 (S.D.N.Y. Sept. 23, 2019), *aff'd*, 812 F. App'x 36 (2d Cir. 2020). Exhibits 1, 3, 8, 9, 10 and 12 are properly incorporated by reference as all are specifically used in the AC: for example, exhibits 8 and 9 are the *very SEC filings* containing the risk disclosures upon which Plaintiffs attempt to build their case. (AC ¶¶ 53-55, 64-67; *accord id.* ¶¶ 42, 86 (Ex. 1); *id.* ¶ 29 (Ex. 3); *id.* ¶ 34, 35, 41, 42 (Ex. 10); *id.* ¶ 93 (Ex. 12)); *see also Seadrill*, 2016 WL 3461311, *2 n.1, *10 n.3 (considering a fact and document incorporated implicitly or integral to the complaint). The Court may consider documents incorporated by reference or integral to the AC in full. *E.g.*, *Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." (alteration in original) (citation omitted)). Moreover, each exhibit is the proper subject of judicial notice as a matter of public record, SEC filing or litigation filing. (Br. at 2, n. 2.)[25] And for purposes of a motion to dismiss, a court "need not accept as true any allegations that are contradicted by documents deemed to be part of the complaint, or materials amenable to judicial notice." *DHL Glob. Forwarding Mgmt. Latin Am., Inc. v. Pfizer, Inc.*, 2014 WL 5169033, at *4 (S.D.N.Y. Oct. 14, 2014) (citation omitted).

## CONCLUSION

For the foregoing reasons, and those in the Opening Brief, the AC should be dismissed.[26]

---

[25] Citing nothing, Plaintiffs claim the documents subject to judicial notice should not be considered because the adjudicative facts were not identified. (Opp. at 8.) But courts routinely take judicial notice of the types of documents submitted. (Br. at 2, n. 2.) Defendants seek judicial notice to establish that information existed in the public domain. *See Wandel*, 590 F. Supp. 3d at 636 n.4. Further, Plaintiffs' cited cases are distinguishable. *See, e.g.*, *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (District court erred in considering materials outside of complaint "neither mentioned nor relied upon by [plaintiff] in drafting its complaint.") (Opp. at 8.)

[26] For the reasons already discussed (Br. at 25), Plaintiffs have failed to plead a violation of Section 20(a).

Dated: New York, New York
       February 14, 2023

                                        Respectfully submitted,

                                        */s/ Susan L. Saltzstein*
                                        Jay B. Kasner
                                        Susan L. Saltzstein
                                        Scott D. Musoff
                                        Mackenzie G. Newman
                                        SKADDEN, ARPS, SLATE,
                                          MEAGHER & FLOM LLP
                                        One Manhattan West
                                        New York, NY 10001
                                        Phone: (212) 735-3000
                                        Fax:    (212) 735-2000
                                        jay.kasner@skadden.com
                                        susan.saltzstein@skadden.com
                                        scott.musoff@skadden.com
                                        mackenzie.newman@skadden.com

                                        *Attorneys for Defendants*

16